## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CALEB REESE,** | : | |
| **JOSEPH GRANICH,** | : | |
| **FIREARMS POLICY COALITION, INC,** | : | |
| **THE SECOND AMENDMENT FOUNDATION,** | : | |
| **and LOUISIANA SHOOTING ASSOCIATION,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action No. - _____ |
| **v.** | : | |
| | : | |
| **THE BUREAU OF ALCOHOL, TOBACCO,** | : | |
| **FIREARMS AND EXPLOSIVES;** | : | |
| **REGINA LOMBARDO,** in her official capacity | : | |
| as Acting Director of the Bureau of Alcohol, | : | |
| Tobacco, Firearms and Explosives; and | : | |
| **WILLIAM P. BARR,** in his official capacity as | : | |
| Attorney General of the United States, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF

**COME NOW** the Plaintiffs Caleb Reese, Joseph Granich, Firearms Policy Coalition, Inc., The Second Amendment Foundation, and Louisiana Shooting Association, by and through counsel, and complain of Defendants as follows:

### INTRODUCTION

1.      The Second Amendment protects "the right of the people to keep and bear Arms." And the Constitution ensures that "the right of law-abiding, responsible citizens to use arms in defense of hearth and home" is "elevate[d] above all [governmental] interests" in restricting the right. *District of Columbia v. Heller,*

1

554 U.S 570, 635 (2008).

2.    Plaintiffs include law-abiding, responsible adult citizens who wish to purchase handguns—"the quintessential self-defense weapon," and "the most popular weapon chosen by Americans for self-defense," *id.* at 629—and handgun ammunition from Federal Firearms Licensees ("FFL") and lawful ammunition sellers for all lawful purposes, including "defense of hearth and home."

3.    But defendants' laws, including 18 U.S.C. §§ 922(b)(l)[1] and 922(c)(1), 27 C.F.R. §§ 478.99(b)(l), 478.124(a), and 478.96(b), the related regulations, policies, practices, customs designed to implement the same, and Defendants' continuing enforcement of them (collectively referred to herein as the "Handgun Ban"), prevent law-abiding, responsible adult citizens under age twenty-one—including Plaintiffs Reese and Granich, and the similarly situated members and supporters of Plaintiffs Firearms Policy Coalition, Inc., ("FPC"), The Second Amendment Foundation ("SAF"), and Louisiana Shooting Association ("LSA")—from doing so, in violation of the Second and Fifth Amendments to the United States Constitution.

4.    Plaintiffs acknowledge the Fifth Circuit's decision in *Nat'l Rifle Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 714 F.3d 334 (5th Cir. 2013)). Plaintiffs present this case as a good faith attempt to change the law as required to conform to the constitutional standards set forth in the Constitution's

---

[1] "It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—(1) any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age." 18 U.S.C. § 922(b)(1).

text, and as the Supreme Court has elucidated in *Heller*.

5.      The Government's Handgun Ban, and the Defendants' actual and threatened enforcement of the same, should and must—under the text of the Constitution itself, as well as our Nation's history and tradition, and the Supreme Court's precedents—be declared unconstitutional and enjoined.

## PARTIES

6.      Plaintiff Caleb Reese is a natural person over the age of eighteen and under the age of twenty-one. He is a citizen of Vermilion Parish, Louisiana and the United States, and is a member of Plaintiffs Firearms Policy Coalition, The Second Amendment Foundation, and Louisiana Shooting Association. Plaintiff Reese brings this case on behalf of himself, and as a representative of a class of similarly situated individuals—i.e., law-abiding, adult U.S. citizens under twenty-one years of age who are denied the right to lawfully purchase a handgun and/or handgun ammunition from lawful retailers under the Handgun Ban.

7.      Plaintiff Joseph Granich is a natural person over the age of eighteen and under the age of twenty-one. He is a citizen of Sulphur, Louisiana and the United States, and is a member of Plaintiffs Firearms Policy Coalition, The Second Amendment Foundation, and Louisiana Shooting Association. Plaintiff Granich brings this case on behalf of himself, and as a representative of a class of similarly situated individuals—i.e., law-abiding, adult U.S. citizens under twenty-one years of age who are denied the right to lawfully purchase a handgun and/or handgun ammunition from lawful retailers under the Handgun Ban.

8.      Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento,

3

California. The purposes of FPC include defending and promoting the People's rights—including the right to keep and bear arms—advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC has members and supporters who are both over and under the age of twenty-one, as well as members and supporters who are Federal Firearms Licensee (FFL) firearm retailers and other lawful ammunition retailers, shooting ranges, trainers, and others within the firearms and Second Amendment ecosystem. FPC has been adversely and directly harmed in having expended and diverted organizational resources to review and analyze the Handgun Ban, and communicate with its members and the public about the Handgun Ban. FPC has members and supporters throughout the United States, some of whom reside in Vermilion Parish and Calcasieu Parish, Louisiana, and other portions of western Louisiana. FPC brings this action on behalf of itself, as well as its members, supporters who possess all the indicia of membership, and similarly situated members of the public who would purchase handguns and handgun ammunition from lawful retailers, and FFL handgun retailers who would sell handguns and handgun ammunition to adults under the age of twenty-one, but are prohibited from doing so by the Handgun Ban enforced by Defendants, including through criminal penalties and loss of liberty and property, and the revocation of FFL and business licenses.

9.    Plaintiff The Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the

Second Amendment through education, research, publishing, and legal action programs focused on the constitutional right to keep and bear arms and the consequences of gun control. SAF has members and supporters both over and under the age of twenty-one. SAF has members and supporters throughout the United States, some of whom reside in Vermilion Parish and Calcasieu Parish, Louisiana, and other portions of western Louisiana. SAF brings this action on behalf of itself, as well as its members, supporters who possess all the indicia of membership, and similarly situated members of the public who would purchase handguns and handgun ammunition from lawful retailers, and FFL handgun retailers who would sell handguns and handgun ammunition to adults under the age of twenty-one, but are prohibited from doing so by the Handgun Ban enforced by Defendants, including through criminal penalties and loss of liberty and property, and the revocation of FFL and business licenses.

10. Plaintiff Louisiana Shooting Association ("LSA") is a nonprofit membership organization founded in 1966, with a place of business in Slidell, Louisiana. The purposes of LSA include the promotion and protection of firearms owners' constitutionally guaranteed right to own, bear, and use firearms for the protection of home and family, sport hunting, target shooting, and any other lawful purpose. LSA is affiliated with the Civilian Marksmanship Program, National Rifle Association, and the National Board for the Promotion of Rifle Practice. LSA provides support, services, competition sponsorship, instruction, and other promotion and facilitation of the shooting sports. LSA encourages and promotes training in hunter safety, marksmanship, and junior shooting, including by adults under the age of twenty-one. LSA has members and supporters throughout

5

Louisiana, some of whom reside in Vermilion Parish and Calcasieu Parish, Louisiana, and other portions of western Louisiana. LSA has members and supporters both over and under the age of twenty-one. LSA brings this action on behalf of itself, as well as its members, supporters who possess all the indicia of membership, and similarly situated members of the public who would purchase handguns and handgun ammunition from lawful retailers, and FFL handgun retailers who would sell handguns and handgun ammunition to adults under the age of twenty-one, but are prohibited from doing so by the Handgun Ban enforced by Defendants, including through criminal penalties and loss of liberty and property, and the revocation of FFL and business licenses.

11. The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is an agency of the United States under its Department of Justice ("DOJ"). ATF is responsible for the investigation and prevention of federal offenses involving the illegal use, manufacture, and possession of firearms, including violations and alleged violations of the Handgun Ban. ATF is also responsible for, *inter alia*, regulating and licensing the sale, possession, transfer, and transportation of firearms and ammunition in interstate commerce. It is authorized to implement regulations for purposes of enforcing the Handgun Ban.

12. Defendant Regina Lombardo is the Acting Director of the ATF. As Acting Director of ATF, Defendant Lombardo is responsible for the creation, implementation, execution, and administration of the laws, regulations, customs, practices, and policies of the United States, particularly those related to firearms. She is presently enforcing and has been enforcing at all times relevant to the Complaint, the laws, regulations, customs, practices, and policies underlying the

Handgun Ban. She is sued in her official capacity.

13.    Defendant William P. Barr is the Attorney General of the United States ("Attorney General") and is responsible for executing and administering the laws, regulations, customs, practices, and policies of the United States. Defendant Barr is the head of the DOJ. In that capacity, he is presently enforcing and has been enforcing at all times relevant to the Complaint, the laws, regulations, customs, practices, and policies underlying the Handgun Ban. As Attorney General, Defendant Barr is ultimately responsible for supervising the functions and actions of the DOJ, including the ATF, which is an arm of the DOJ. He is sued in his official capacity.

## JURISDICTION AND VENUE

14.    This action seeks relief pursuant to 28 U.S.C §§ 2201, 2202, and 2412. Jurisdiction is thus founded on 28 U.S.C. § 1331, in that this action arises under the Constitution and laws of the United States.

15.    The federal Defendants, including ATF, are amenable to suit for relief other than money damages pursuant to 5 U.S.C. § 702.

16.    The Court has authority to award costs and attorney fees under 28 U.S.C. § 2412.

17.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (e).

## STATEMENT OF FACTS

18.    Plaintiff Reese has never been charged with nor convicted of any misdemeanor or felony offense, and is otherwise eligible to purchase and possess firearms, including handguns, under all applicable laws. Plaintiff Reese does not own a handgun but intends and desires to purchase a handgun and handgun ammunition for lawful purposes, including self-defense.

19.     Plaintiff Reese desires to purchase a handgun and handgun ammunition for self-defense and other lawful purposes, including proficiency training and target shooting, in the exercise of his fundamental right to keep and bear arms under the Second Amendment. But as a result of Defendants' active enforcement of the Handgun Ban, Plaintiff Reese is prevented from doing so.

20.     Plaintiff Reese is acquainted with the proper and safe handling, use, and storage of handguns and handgun ammunition, and he is otherwise entirely eligible to do so under all applicable state and federal laws.

21.     The Handgun Ban prevents Plaintiff Reese from purchasing handguns of the makes and models of his choice, with full manufacturer warranty and support, from the lawful retailers of his choice, in violation of his constitutionally enumerated rights.

22.     But for the Handgun Ban, Plaintiff Reese would purchase handguns and handgun ammunition from the lawful retailers of his choice to exercise his right to keep and bear arms for self-defense and other lawful purposes.

23.     Plaintiff Granich has never been charged with nor convicted of any misdemeanor or felony offense, and is otherwise eligible to purchase and possess firearms, including handguns, under all applicable laws. Plaintiff Granich does not own a handgun but intends and desires to purchase a handgun and handgun ammunition for lawful purposes, including self-defense.

24.     Plaintiff Granich desires to purchase a handgun and handgun ammunition for self-defense and other lawful purposes, including proficiency training and target shooting, in the exercise of his fundamental right to keep and bear arms under the Second Amendment. But as a result of Defendants' active enforcement of the

Handgun Ban, Plaintiff Granich is prevented from doing so.

25. The Handgun Ban prevents Plaintiff Granich from purchasing handguns of the makes and models of his choice, with full manufacturer warranty and support, from the lawful retailers of his choice, in violation of his constitutionally enumerated rights.

26. Plaintiff Granich is acquainted with the proper and safe handling, use, and storage of handguns and handgun ammunition, and he is otherwise entirely eligible to do so under all applicable state and federal laws.

27. But for the Handgun Ban, Plaintiff Granich would purchase handguns and handgun ammunition from the lawful retailers of his choice to exercise his right to keep and bear arms for self-defense and other lawful purposes.

28. Eighteen is the age of majority in 47 states, including Louisiana.

29. At eighteen years old, all law-abiding U.S. citizens have the right to: (i) vote; (ii) fully exercise the freedoms of speech, assembly, and petitioning of the government under the First Amendment to the United States Constitution; (iii) the full panoply of liberty protections in the Fourth, Fifth, and Sixth Amendments; (iv) enter into contracts; ; (v) fully exercise the right to keep and bear arms under the Second Amendment to the United States Constitution; and (vi) serve in the United States Military as well as the militias and guards of the several states. They are also held responsible as adults for crimes they commit, and even being held fully accountable before the law for criminal matters to the point of being punished by execution.

30. Indeed, all male citizens over eighteen years of age are designated members of the militia pursuant to 10 U.S.C. § 246(a), and may be selected and inducted for

training and service into the United States armed forces under 50 U.S.C. § 3803(a). *See Heller*, 554 U.S. at 624 ("The traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense") (quoting *United States v. Miller*, 307 U.S. 174, 170 (1939)).

31.   Many states have parallel statutes for their state militaries. In Louisiana, for example, the current militia ages are 17 to 64. LA.R.S §29:3(A). As such, adults like Plaintiffs and Plaintiffs members and supporters are eligible to serve and die for their state and country, and many in fact do.

32.   In Louisiana, "[a]ll able-bodied persons between the ages of seventeen and sixty-four residing in this state and who are not exempt by the laws of the United States of America or of this state constitute the militia of Louisiana and are subject to military duty." LA.R.S. § 29:3(A). The State's "militia is divided into two classes, the organized militia and the unorganized militia." LA.R.S. § 29:3(B). "The organized militia consists of the national guard, the Louisiana State Guard and other organized military forces which may be authorized by law," LA.R.S. § 29:3(B)(1), and "[t]he unorganized militia consists of all other persons subject to military duty."

33.   Thus, these adults, like Plaintiffs Reese and Granich in Louisiana, must be armed and ready to be "called into the service of the state or of the United States of America." LA.R.S. § 29:6.

34.   Other states have similar statutes. In California, for example, the "militia of the State" consists of both the organized and unorganized militia. The State's organized militia encompasses the National Guard, State Military Reserve and Naval Militia. Cal. Mil. and Vet. Code § 120. The unorganized militia "consist of

all persons liable to service in the militia, but not members of the National Guard, the State Military Reserve, or the Naval Militia." *Id.* § 121. Accordingly, both the State's organized and unorganized militia consist of "all able-bodied male citizens … who are between the ages of eighteen and forty-five …." *Id.* § 122 (emphasis added).

## THE HANDGUN BAN

35.   18 U.S.C. § 922(b)(1) declares: "It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver . . . any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age." All violators "shall be fined under this title, imprisoned not more than five years, or both." 18 U.S.C. §924(a)(1)(D).

36.   As reflected in Defendant ATF's Minimum Age for Gun Sales and Transfers publication:[2]

> Handguns: Under federal law, FFLs may not sell, deliver, or otherwise transfer any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is under the age of 21.

37.   As further reflected on Defendant ATF's Q&A portion of its website:[3]

> **May an individual between the ages of 18 and 21 years of age acquire a handgun from an unlicensed individual who is also a**

---

[2]

    Available online at: https://www.atf.gov/resource-center/docs/guns-min-agepdf/download.

[3]

    Available online at https://www.atf.gov/questions-and-answers/qa/may-individual-between-ages-18-and-21-years-age-acquire-handgun-unlicensed.

**resident of that same State?**

An individual between 18 and 21 years of age may acquire a handgun from an unlicensed individual who resides in the same State, provided the person acquiring the handgun is not otherwise prohibited from receiving or possessing firearms under Federal law. A Federal firearms licensee may not, however, sell or deliver a firearm other than a shotgun or rifle to a person the licensee knows or has reasonable cause to believe is under 21 years of age.

There may be State or local laws or regulations that govern this type of transaction. Contact the office of your State Attorney General for information on any such requirements.

38.    18 U.S.C. § 922(c) provides that "a licensed importer, licensed manufacturer, or licensed dealer may sell a firearm to a person who does not appear in person at the licensee's business premises . . . only if" the person signs a sworn statement attesting "that, in the case of any firearm other than a shotgun or a rifle, I am twenty-one years or more of age."

39.    27 C.F.R. § 478.99(b)(l) similarly declares: "A licensed importer, licensed manufacturer, licensed dealer, or licensed collector shall not sell or deliver (1) any firearm or ammunition . . . if the firearm, or ammunition, is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the importer, manufacturer, dealer, or collector knows or has reasonable cause to believe is less than 21 years of age."

40.    Under 18 U.S.C. § 922(a)(5), it is illegal "for any person [other than a licensed dealer] to transfer, sell, trade, give, transport, or deliver any firearm to any person . . . who the transferor knows or has reasonable cause to believe does not reside in . . . the State in which the transferor resides."

41.    Thus, the Handgun Ban categorically bans any adult under the age of twenty-one from purchasing a handgun and handgun ammunition from lawful retailers.

## THE HANDGUN BAN IS UNCONSTITUTIONAL

42.     The Second Amendment guarantees the individual right "to keep and bear arms." *See also Heller*, 554 U.S. at 595.

43.     This is especially true when it comes to handguns, which *Heller* explicitly recognized as "the quintessential self-defense weapon." *Id*. at 629.

44.     The fundamental right to keep and bear arms protected by the Second Amendment secures the right to purchase handguns and handgun ammunition for self-defense and other lawful purposes. These protections extend in full to all law-abiding, responsible adults aged eighteen and older.

45.     The Handgun Ban impermissibly infringes upon the right to keep and bear arms of all law-abiding individuals aged 18 to 20, as well as the concomitant rights of all FFLs and entities who would otherwise be able to lawfully engage in the sale of handguns to such individuals but for the ban.

46.     *Heller* demonstrated—through its analysis of the Second Amendment's text, supported and informed by our Nation's history and tradition—that severe restrictions on the possession of handguns for self-defense must be held categorically unconstitutional, rather than subject such regulations to interest balancing.

47.     The analysis must be "guided by the principle that '[t]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning.'" *Heller*, 554 U.S. at 576 (quoting *United States v. Sprague*, 282 U.S. 716, 731 (1931)). We look to "the historical background of the Second Amendment" because "it has always been widely understood that the Second Amendment, like the First and Fourth

Amendments, codified a pre-existing right." *Id.* at 592.

48. American history and tradition confirm that all law-abiding adults, including those under the age of twenty-one, were understood to have full Second Amendment rights in the founding era.

49. Indeed, over 250 colonial and founding-era militia statutes throughout the seventeenth and eighteenth centuries mandated that persons aged eighteen to twenty acquire and keep arms in order to serve in the militia and otherwise protect their communities. *See generally* David Kopel & Joseph Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. ILL. U. L.J. 495 (2019) (providing over 200 militia statutes).

50. Many statutes unrelated to militia service also required adults under the age of twenty-one to keep and carry arms. *Id.*

51. In contrast, no colonial or founding era law restricted the right of law-abiding adults under the age of twenty-one to acquire or possess arms.

52. Only months after the Second Amendment was ratified, Congress took steps to "provide for organizing, arming, and disciplining, the Militia" (U.S. Const. art. I, § 8, cl. 16), by enacting the Militia Act of 1792, requiring that every citizen of each respective state, "who is or shall be of the age of eighteen years, and under the age of forty-five years ... shall severally and respectively be enrolled in the militia[.]"

53. In 1790, Secretary of War Henry Knox submitted a militia plan to Congress stating that "all men of the legal military age should be armed," and that "[t]he period of life in which military service shall be required of [citizens] [was] to commence at eighteen." 1 ANNALS OF CONG. app. 2141, 2145-2146.

54.   Representative Jackson agreed "that from eighteen to twenty-one was found to be the best age to make soldiers of." *Ibid*. (emphasis added). Eighteen was the age that George Washington recommended for militia enrollment. 26 WRITINGS OF GEORGE WASHINGTON 389 (John C. Fitzpartick ed., 1938).

55.   When the Second Amendment was ratified, the colonial and founding-era laws and customs provide irrefutable evidence that adults under the age of twenty-one had the same Second Amendment rights as adults over twenty-one years of age.

56.   *Heller* may not have "clarif[ied] the entire field" of Second Amendment analysis, 554 U.S. at 634, but it surely foreclosed any argument that the Second Amendment does not protect individuals who, at the time of ratification, were *required* by both state and federal law to keep and bear arms. *See Id.* at 625 (concluding with "our adoption of the original understanding of the Second Amendment").

57.   While the right protected by the Second Amendment is by no means, and could not be, limited to militia service, "the threat that the new Federal Government would destroy the citizens' militia by taking away their arms was the reason that the right … was codified in the written Constitution." *Id.* at 559.

58.   Still today, able-bodied male citizens at least 17 years of age (and under 45 years of age) are designated members of the U.S. militia pursuant to federal statute, 10 U.S.C. § 246(a), and may be selected and inducted for training and service into the United States armed forces, 50 U.S.C. § 3803(a).

59.   Thus, there is and never has been any constitutionally grounded basis for restricting the rights of law-abiding adults over eighteen yet under twenty-one years of age who are eligible to serve in the military and to die for their country.

60.   It is clear that the text of the Constitution itself, as it may be informed by our Nation's history and tradition and the Supreme Court's precedents, protects the right of adults eighteen years of age, but under age twenty-one—like Plaintiffs Reese and Granich, Plaintiffs FPC, SAF, and LSA's members and supporters, and others like them—to acquire, keep, and bear handguns for lawful purposes including but not limited to self-defense, sport, and hunting, just like law-abiding adults who are aged twenty-one and older. And this right further guarantees for them all, at a minimum, the ability to buy handguns and handgun ammunition, lawfully sell and transfer them, and transport, carry, and practice safety and proficiency with them.

61.   The handgun is a ubiquitous armament in American society and is owned by millions of law-abiding citizens. Handguns are neither "unusual" nor "dangerous" as those terms are used in *Heller*.

62.   The Second Amendment right fully extends to handguns, such as those that Plaintiffs and other similarly situated adults would lawfully, *inter alia*, purchase, possess, keep, bear, and practice proficiency with but for the Handgun Ban and Defendants' enforcement of it.

63.   The Handgun Ban is flatly unconstitutional under the Second Amendment and *Heller*.

## COUNT I
### (U.S CONST., AMEND. II)

71.   The foregoing paragraphs are incorporated herein as if set forth in full.

72.   18 U.S.C. §§ 922(b)(l) and 922(c)(1), 27 C.F.R. §§ 478.99(b)(l), 478.124(a), 478.96(b), and the related regulations, policies, practices, and customs designed

to implement the same, and the Defendants' enforcement of them, all of which underlie the Handgun Ban, prohibit federally licensed firearms dealers from selling handguns and handgun ammunition to the large class of law-abiding, responsible, and otherwise-eligible adults aged eighteen to twenty (i.e., adults under the age of twenty-one).

73. As a direct consequence of the Handgun Ban, individuals in this class are unable to exercise their right to purchase handguns from FFLs, and handgun ammunition from lawful retailers, for self-defense and all lawful purposes protected under the Second Amendment.

74. Consequently, the Handgun Ban unconstitutionally infringes and imposes an impermissible burden upon the Second Amendment rights of Plaintiffs and all those similarly situated.

75. Absent a declaration that the Handgun Ban unconstitutionally precludes Plaintiffs and those similarly situated from exercising their enumerated rights, Defendants will continue to enforce the same, contrary to both public policy and the Constitution of the United States, causing irreparable damage to Plaintiffs and those similarly situated.

76. Plaintiffs FPC, SAF, and LSA bring this case as public interest organizations on behalf of their adult members and supporters who are, because they are under the age if twenty-one, prohibited from lawfully purchasing handguns from FFLs as well as handgun ammunition from lawful retailers under the Handgun Ban, and their FFL members and supporters who are prohibited from conducting such sales under the Handgun Ban. All such individuals and entities would otherwise have standing to sue in their own right based on the Handgun Ban against handgun

sales to these adults. The resulting injuries and interests at stake are germane to the core purposes of each entity and organization, and neither the claims asserted nor the relief requested require participation of all the affected individual members, licensees, or business entities.

77.  As to all claims made in a representative/associational capacity herein, there are common questions of law and fact that substantially injure and adversely affect the rights, duties, and criminal liabilities of the many similarly situated adult citizens who knowingly or unknowingly are subject to the Handgun Ban. The relief sought in this action is declaratory and injunctive in nature, and the action involves matters of substantial public interest that are likely to reoccur over time with the potential of evading judicial review. Considerations of necessity, convenience, and justice justify the requested relief for the individual and institutional Plaintiffs in a representative/associational capacity.

78.  Plaintiffs seek a declaration that the Handgun Ban infringes upon the rights of Plaintiffs Reese and Granich, Plaintiffs FPC, SAF, and LSA's members and supporters, and those similarly situated, and is unconstitutional facially and as applied to them.

79.  Plaintiffs are entitled to all reasonable litigation expenses and attorney fees associated with the prosecution of this declaratory judgment action as it was made necessary by Defendants' unconstitutionally infringing behavior.

80.  Plaintiffs are presently and continuously injured by Defendants' enforcement of 18 U.S.C. § 922(b)(1) and (c)(1) and the related regulations, policies, practices, and customs underlying the Handgun Ban, insofar as they violate the Second Amendment rights of Plaintiffs, and all those similarly situated, by prohibiting

18

licensed dealers from conducting sales of handguns to adults aged eighteen to twenty.

81.   If not enjoined by this Court, Defendants will continue to enforce 18 U.S.C. § 922(b)(1) and (c)(1) and the related regulations, policies, practices, and customs underlying the Handgun Ban in derogation of Plaintiffs' constitutional rights and of all those similarly situated. Plaintiffs and the class of individuals and entities they represent have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to the Handgun Ban.

82.   For the foregoing reasons, Plaintiffs request declaratory and injunctive relief as hereinafter prayed for.

## COUNT II
### (U.S CONST., AMEND. V)

71.   The foregoing paragraphs are incorporated herein as if set forth in full.

72.   Title 18, Sections 922(b)(1) and 922(c)(1) of the United States Code and Title 27, Sections 478.99(b)(1), 478.124(a), 478.96(b) of the Code of Federal Regulations ban federally licensed firearms dealers from selling handguns and handgun ammunition to law-abiding adults under the age of twenty-one, but do not ban the sale of the same handguns and handgun ammunition to law-abiding adults over the age of twenty.

73.   These laws violate Plaintiffs' and Plaintiffs' members and supporters' right to equal protection of the laws guaranteed under the Due Process Clause of the Fifth Amendment to the United States Constitution.

19

74.     For the foregoing reasons, Plaintiffs request declaratory and injunctive relief as hereinafter prayed for.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment in their favor and against Defendants as follows:

A.      Declare that 18 U.S.C. §§ 922(b)(l) and (c)(1), their derivative regulations, and all related laws, policies, enforcement practices, and customs underlying the Handgun Ban, as well as Defendants' enforcement of same, violate the right to keep and bear arms secured by the Second Amendment to the United States Constitution;

B.      Declare that 18 U.S.C. §§ 922(b)(l) and (c)(1), their derivative regulations, and all related laws, policies, practices, and customs underlying the Handgun Ban, as well as Defendants' enforcement of same, violate the right to equal protection of the laws as secured by the Due Process Clause of the Fifth Amendment to the United States Constitution;

C.      Preliminarily and permanently enjoin the Defendants, their officers, agents, servants, employees, all persons in active concert or participation with them, and all who have notice of the injunction, from enforcing 18 U.S.C. §§ 922(b)(l) and (c)(1), their derivative regulations, and all related laws, policies, enforcement practices, and customs underlying the Handgun Ban, against Plaintiffs, Plaintiffs' members, and others similarly situated to them;

D.      Award costs and attorney fees and expenses to the maximum extent permitted under 28 U.S.C. § 2412 and any/all other applicable laws; and,

E.      Grant such other and further relief as the Court deems just and proper.


Respectfully submitted, this 5th day of November 2020.

/s/ George J. Armbruster III
Armbruster & Associates, APLC
332 E. Farrel Road, Suite D
Lafayette, LA 70508
Phone: 337-889-5511
Fax: 337-889-5512
Email: george@arm-assoc.com
Local Counsel

/s/ Raymond M. DiGuiseppe
Raymond M. DiGuiseppe - T.A.
THE DIGUISEPPE LAW FIRM, P.C.
4320 Southport-Supply Road, Suite
300
Southport, NC 28461
Phone: 910-713-8804
Fax: 910-672-7705
Email: law.rmd@gmail.com
App. for Pro Hac Vice Forthcoming

/s/ Adam Kraut
Adam Kraut
FIREARMS POLICY COALITION
1215 K Street, 17th Floor
Sacramento, CA 95814
Phone: (916) 476-2342
Email: akraut@fpclaw.org
App. for Pro Hac Vice Forthcoming

/s/ Joseph Greenlee
Joseph Greenlee
FIREARMS POLICY COALITION
1215 K Street, 17th Floor
Sacramento, CA 95814
Phone: (916) 438-9237
Email: jgr@fpclaw.org
App. for Pro Hac Vice Forthcoming

/s/ John W. Dillon
John W. Dillon
DILLON LAW GROUP APC
2647 Gateway Road
Carlsbad, CA 92009
Phone: (760) 642-7150
Fax: (760) 642-7151
Email: jdillon@dillonlawgp.com
App. for Pro Hac Vice Forthcoming

Attorneys for Plaintiffs