## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CALEB REESE,** | : | |
| **JOSEPH GRANICH,** | : | |
| **EMILY NAQUIN,** | : | |
| **FIREARMS POLICY COALITION, INC,** | : | |
| **THE SECOND AMENDMENT FOUNDATION,** | : | |
| **and LOUISIANA SHOOTING ASSOCIATION,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action No. – 6:20-cv-01438 |
| **v.** | : | |
| | : | |
| **THE BUREAU OF ALCOHOL, TOBACCO,** | : | |
| **FIREARMS AND EXPLOSIVES;** | : | |
| **REGINA LOMBARDO**, in her official capacity | : | |
| as Acting Director of the Bureau of Alcohol, | : | |
| Tobacco, Firearms and Explosives and in her | : | |
| individual capacity; and | : | |
| **MERRICK GARLAND**, in his official capacity as | : | |
| Attorney General of the United States and in his | : | |
| Individual capacity, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES

**COME NOW** the Plaintiffs Caleb Reese, Joseph Granich, Emily Naquin, Firearms Policy Coalition, Inc., The Second Amendment Foundation, and Louisiana Shooting Association, by and through counsel, and complain of Defendants as follows:

### INTRODUCTION

1.     The Second Amendment protects "the right of the people to keep and bear Arms." And the Constitution ensures that "the right of law-abiding, responsible citizens to

1

use arms in defense of hearth and home" is "elevate[d] above all [governmental] interests" in restricting the right. *District of Columbia v. Heller,* 554 U.S 570, 635 (2008).

2.    Plaintiffs include law-abiding, responsible adult citizens who wish to purchase handguns—"the quintessential self-defense weapon," and "the most popular weapon chosen by Americans for self-defense," *Heller,* 554 U.S. at 629—and handgun ammunition from Federal Firearms Licensees ("FFLs") and lawful ammunition sellers for lawful purposes, including "defense of hearth and home."

3.    But Defendants' laws, including 18 U.S.C. § 922(b)(l)[1] and (c)(1); 27 C.F.R. §§ 478.99(b)(l), 478.124(a), and 478.96(b); the related regulations, policies, practices, customs designed to implement the same, and Defendants' continuing enforcement of them (collectively, the "Handgun Ban"), prevent law-abiding, responsible adult citizens under age twenty-one—including Plaintiffs Reese, Granich, and Naquin, and the similarly situated members of Plaintiffs Firearms Policy Coalition, Inc. ("FPC"), The Second Amendment Foundation ("SAF"), and Louisiana Shooting Association ("LSA")—from doing so, in violation of the Second and Fifth Amendments to the United States Constitution.[2] And while the Handgun Ban is unconstitutional on its face, it also is unconstitutional as applied

---

[1] "It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—(1) any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age." 18 U.S.C. § 922(b)(1).

[2] Plaintiffs Reese, Granich, and Naquin are collectively referred to as "Individual Plaintiffs," and Plaintiffs FPC, SAF, and LSA are collectively referred to as "Institutional Plaintiffs."

to women under the age of twenty-one like Plaintiff Naquin, as there is absolutely no justification for barring women under twenty-one from purchasing handguns from licensed dealers.

4.     Plaintiffs acknowledge the Fifth Circuit's decision in *Nat'l Rifle Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 714 F.3d 334 (5th Cir. 2013)), which bars their facial claim in this Court. Plaintiffs present this case as a good-faith attempt to change the law as required to conform to the constitutional standards set forth in the Constitution's text, and as the Supreme Court has elucidated in *Heller*. Plaintiffs also bring this case to vindicate the Second Amendment rights of Plaintiff Naquin and other adult women under the age of twenty-one who are members of the Institutional Plaintiffs, whose as-applied claim is not barred by circuit precedent.

5.     The Government's Handgun Ban, and Defendants' actual and threatened enforcement of the same, should and must—under the text of the Constitution itself, as well as our Nation's history and tradition, and the Supreme Court's precedents—be declared unconstitutional and enjoined.

## **PARTIES**

6.     Plaintiff Caleb Reese is a natural person over the age of eighteen and under the age of twenty-one. He is a citizen of Vermilion Parish, Louisiana and the United States, and is a member of Plaintiffs FPC, SAF, and LSA.

7.     Plaintiff Joseph Granich is a natural person over the age of eighteen and under the age of twenty-one. He is a citizen of Sulphur, Louisiana and the United States, and is a member of Plaintiffs FPC, SAF, and LSA.

8.     Plaintiff Emily Naquin is a natural person over the age of eighteen and under the age of twenty-one. She is a citizen of Lafourche, Louisiana and the United States, and is a member of Plaintiffs FPC, SAF, and LSA.

9.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights—including the right to keep and bear arms—advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC has members who are both over and under the age of twenty-one, as well as members who are Federal Firearms Licensee (FFL) firearm retailers and other lawful ammunition retailers, shooting ranges, trainers, and others within the firearms and Second Amendment ecosystem. FPC has members throughout the United States, some of whom reside in Vermilion Parish, Calcasieu Parish, and Lafourche Parish Louisiana, and other portions of western Louisiana. FPC brings this action on behalf its individual members who would purchase handguns and handgun ammunition from lawful retailers, and its member FFL handgun retailers who would sell handguns and handgun ammunition to adults under the age of twenty-one, but are prohibited from doing so by the Handgun Ban enforced by Defendants, including through criminal penalties and loss of liberty and property, and the revocation of FFL and business licenses.

10.    Plaintiff The Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of

4

business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the constitutional right to keep and bear arms and the consequences of gun control. SAF has members and supporters both over and under the age of twenty-one. SAF has members and supporters throughout the United States, some of whom reside in Vermilion Parish, Calcasieu Parish and Lafourche Parish Louisiana, and other portions of western Louisiana. SAF brings this action on behalf its individual members who would purchase handguns and handgun ammunition from lawful retailers, and member FFL handgun retailers who would sell handguns and handgun ammunition to adults under the age of twenty-one, but are prohibited from doing so by the Handgun Ban enforced by Defendants, including through criminal penalties and loss of liberty and property, and the revocation of FFL and business licenses.

11. Plaintiff Louisiana Shooting Association ("LSA") is a nonprofit membership organization founded in 1966, with a place of business in Slidell, Louisiana. The purposes of LSA include the promotion and protection of firearms owners' constitutionally guaranteed right to own, bear, and use firearms for the protection of home and family, sport hunting, target shooting, and any other lawful purpose. LSA is affiliated with the Civilian Marksmanship Program, National Rifle Association, and the National Board for the Promotion of Rifle Practice. LSA provides support, services, competition sponsorship, instruction, and other promotion and facilitation of the shooting sports. LSA encourages and promotes training in hunter safety, marksmanship, and junior shooting, including by adults

under the age of twenty-one. LSA has members throughout Louisiana, some of whom reside in Vermilion Parish, Calcasieu Parish and Lafourche Parish Louisiana, and other portions of western Louisiana. LSA has members both over and under the age of twenty-one. LSA brings this action on behalf of its individual members who would purchase handguns and handgun ammunition from lawful retailers, and its member FFL handgun retailers who would sell handguns and handgun ammunition to adults under the age of twenty-one, but are prohibited from doing so by the Handgun Ban enforced by Defendants, including through criminal penalties and loss of liberty and property, and the revocation of FFL and business licenses.

12.     The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is an agency of the United States under its Department of Justice ("DOJ"). ATF is responsible for the investigation and prevention of federal offenses involving the illegal use, manufacture, and possession of firearms, including violations and alleged violations of the Handgun Ban. ATF is also responsible for, *inter alia*, regulating and licensing the sale, possession, transfer, and transportation of firearms and ammunition in interstate commerce. It is authorized to implement regulations for purposes of enforcing the Handgun Ban.

13.     Defendant Regina Lombardo is the Acting Director of the ATF. As Acting Director of ATF, Defendant Lombardo is responsible for the creation, implementation, execution, and administration of the laws, regulations, customs, practices, and policies of the United States, particularly those related to firearms. She is presently enforcing and has been enforcing at all times relevant to the Complaint, the laws, regulations, customs, practices, and policies underlying the

6

Handgun Ban. She is sued in her official capacity and in her individual capacity.

14.   Defendant Merrick Garland is the Attorney General of the United States ("Attorney General") and is responsible for executing and administering the laws, regulations, customs, practices, and policies of the United States. Defendant Garland is the head of the DOJ. In that capacity, he is presently enforcing and has been enforcing at all times relevant to the Complaint, the laws, regulations, customs, practices, and policies underlying the Handgun Ban. As Attorney General, Defendant Garland is ultimately responsible for supervising the functions and actions of the DOJ, including the ATF, which is an arm of the DOJ. He is sued in his official capacity and in his individual capacity.

## JURISDICTION AND VENUE

15.   This action seeks relief pursuant to 28 U.S.C §§ 2201, 2202, and 2412. Jurisdiction is founded on 28 U.S.C. § 1331, in that this action arises under the Constitution and laws of the United States.

16.   The federal Defendants, including ATF, are amenable to suit for relief other than money damages pursuant to 5 U.S.C. § 702. Federal Defendants Lombardo and Garland are amendable to suit in their individual capacities for nominal damages pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and its progeny.

17.   The Court has authority to award costs and attorney fees under 28 U.S.C. § 2412.

18.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (e).

## STATEMENT OF FACTS

19.   Plaintiff Reese has never been charged with nor convicted of any misdemeanor or

felony offense, and is otherwise eligible to purchase and possess firearms, including handguns, under all applicable laws. Plaintiff Reese does not own a handgun but intends and desires to purchase a handgun and handgun ammunition for lawful purposes, including self-defense.

20.     Plaintiff Reese desires to purchase a Glock Model 21 handgun and handgun ammunition for self-defense and other lawful purposes, including proficiency training and target shooting, in the exercise of his fundamental right to keep and bear arms under the Second Amendment. But as a result of Defendants' active enforcement of the Handgun Ban, Plaintiff Reese is prevented from doing so.

21.     Plaintiff Reese is acquainted with the proper and safe handling, use, and storage of handguns and handgun ammunition, and he is otherwise entirely eligible to acquire and possess handguns for such purposes under all applicable state and federal laws.

22.     The Handgun Ban prevents Plaintiff Reese from purchasing a Glock Model 21, with full manufacturer warranty and support, from a lawful retailer in violation of his constitutionally enumerated rights.

23.     But for the Handgun Ban, Plaintiff Reese would purchase a Glock Model 21 and handgun ammunition from a lawful retailer to exercise his right to keep and bear arms for self-defense and other lawful purposes. On information and belief, this firearm is otherwise available for Plaintiff Reese's purchase from multiple firearms retailers within his local area.

24.     Plaintiff Granich has never been charged with nor convicted of any misdemeanor or felony offense, and is otherwise eligible to purchase and possess firearms, including handguns, under all applicable laws. Plaintiff Granich does not own a

8

handgun but intends and desires to purchase a handgun and handgun ammunition for lawful purposes, including self-defense.

25. Plaintiff Granich desires to purchase one or more popular model handguns which are readily available for commercial sale in his area, and handgun ammunition for self-defense and other lawful purposes, including proficiency training and target shooting, in the exercise of his fundamental right to keep and bear arms under the Second Amendment. But as a result of Defendants' active enforcement of the Handgun Ban, Plaintiff Granich is prevented from doing so.

26. The Handgun Ban prevents Plaintiff Granich from purchasing handguns of the makes and models of his choice, with full manufacturer warranty and support, from lawful retailers, in violation of his constitutionally enumerated rights.

27. Plaintiff Granich is acquainted with the proper and safe handling, use, and storage of handguns and handgun ammunition, and he is otherwise entirely eligible acquire and possess handguns for such purposes under all applicable state and federal laws.

28. But for the Handgun Ban, Plaintiff Granich would purchase one or more popular model handguns which are readily available for commercial sale in his area, and handgun ammunition from lawful retailers to exercise his right to keep and bear arms for self-defense and other lawful purposes. [On information and belief, this firearm is otherwise available for Plaintiff Granich's purchase from multiple firearms retailers within his local area.]

29. Plaintiff Naquin has never been charged with nor convicted of any misdemeanor or felony offense, and is otherwise eligible to purchase and possess firearms,

including handguns, under all applicable laws. Plaintiff Naquin does not own a handgun but intends and desires to purchase a handgun and handgun ammunition for lawful purposes, including self-defense.

30.     Plaintiff Naquin desires to purchase a Smith and Wesson M&P Shield and handgun ammunition for self-defense and other lawful purposes, including proficiency training and target shooting, in the exercise of her fundamental right to keep and bear arms under the Second Amendment. But as a result of Defendants' active enforcement of the Handgun Ban, Plaintiff Naquin is prevented from doing so.

31.     The Handgun Ban prevents Plaintiff Naquin from purchasing a Smith and Wesson M&P Shield, with full manufacturer warranty and support, from a lawful retailer, in violation of her constitutionally enumerated rights.

32.     Plaintiff Naquin is acquainted with the proper and safe handling, use, and storage of handguns and handgun ammunition, and she is otherwise entirely eligible to acquire and possess handguns for such purposes under all applicable state and federal laws.

33.     But for the Handgun Ban, Plaintiff Naquin would purchase a Smith and Wesson Shield and handgun ammunition from a lawful retailer to exercise her right to keep and bear arms for self-defense and other lawful purposes. On information and belief, this firearm is otherwise available for Plaintiff Naquin's purchase from multiple firearms retailers within her local area.

34.     Eighteen is the age of majority in 47 states, including Louisiana.

35.     At eighteen years old, all law-abiding U.S. citizens have the right to: (i) vote; (ii) fully exercise the freedoms of speech, assembly, and petitioning of the

government under the First Amendment to the United States Constitution; (iii) the full panoply of liberty protections in the Fourth, Fifth, and Sixth Amendments; (iv) enter into contracts; and (v) serve in the United States Military as well as the militias and guards of the several states. They are also held responsible as adults for crimes they commit, and even being held fully accountable before the law for criminal matters to the point of being punished by execution.

36.    Indeed, all male citizens over eighteen years of age are designated members of the militia pursuant to 10 U.S.C. § 246(a) and may be selected and inducted for training and service into the United States armed forces under 50 U.S.C. § 3803(a). *See Heller*, 554 U.S. at 624 ("The traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense.") (quoting *United States v. Miller*, 307 U.S. 174, 170 (1939)).

37.    Many states have parallel statutes for their state militaries. In Louisiana, for example, the current militia ages are 17 to 64. LA.R.S. §29:3(A). As such, adults like Plaintiffs and Plaintiffs members are eligible to serve and die for their state and country, and many in fact do.

38.    In Louisiana, "[a]ll able-bodied persons between the ages of seventeen and sixty-four residing in this state and who are not exempt by the laws of the United States of America or of this state constitute the militia of Louisiana and are subject to military duty." LA.R.S. § 29:3(A). The State's "militia is divided into two classes, the organized militia and the unorganized militia." LA.R.S. § 29:3(B). "The organized militia consists of the national guard, the Louisiana State Guard and other organized military forces which may be authorized by law," LA.R.S.

§ 29:3(B)(1), and "[t]he unorganized militia consists of all other persons subject to military duty."

39.   Thus, adults like Plaintiffs Reese and Granich in Louisiana must be armed and ready to be "called into the service of the state or of the United States of America." LA.R.S. § 29:6.

## THE HANDGUN BAN

40.   18 U.S.C. § 922(b)(1) declares: "It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver . . . any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age." All violators "shall be fined under this title, imprisoned not more than five years, or both." 18 U.S.C. §924(a)(1)(D).

41.   As reflected in Defendant ATF's Minimum Age for Gun Sales and Transfers publication:[3]

> Handguns: Under federal law, FFLs may not sell, deliver, or otherwise transfer any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is under the age of 21.

42.   As further reflected on Defendant ATF's Q&A portion of its website:[4]

> **May an individual between the ages of 18 and 21 years of age acquire a handgun from an unlicensed individual who is also a**

---

[3] Available online at: https://www.atf.gov/resource-center/docs/guns-min-agepdf/download.

[4] Available online at https://www.atf.gov/questions-and-answers/qa/may-individual-between-ages-18-and-21-years-age-acquire-handgun-unlicensed.

resident of that same State?

An individual between 18 and 21 years of age may acquire a handgun from an unlicensed individual who resides in the same State, provided the person acquiring the handgun is not otherwise prohibited from receiving or possessing firearms under Federal law. A Federal firearms licensee may not, however, sell or deliver a firearm other than a shotgun or rifle to a person the licensee knows or has reasonable cause to believe is under 21 years of age.

There may be State or local laws or regulations that govern this type of transaction. Contact the office of your State Attorney General for information on any such requirements.

43.     18 U.S.C. § 922(c) provides that "a licensed importer, licensed manufacturer, or licensed dealer may sell a firearm to a person who does not appear in person at the licensee's business premises . . . only if" the person signs a sworn statement attesting "that, in the case of any firearm other than a shotgun or a rifle, I am twenty-one years or more of age."

44.     27 C.F.R. § 478.99(b)(l) similarly declares: "A licensed importer, licensed manufacturer, licensed dealer, or licensed collector shall not sell or deliver (1) any firearm or ammunition . . . if the firearm, or ammunition, is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the importer, manufacturer, dealer, or collector knows or has reasonable cause to believe is less than 21 years of age."

45.     Under 18 U.S.C. § 922(a)(5), it is illegal "for any person [other than a licensed dealer] to transfer, sell, trade, give, transport, or deliver any firearm to any person . . . who the transferor knows or has reasonable cause to believe does not reside in . . . the State in which the transferor resides."

46.     Thus, the Handgun Ban categorically bans any adult under the age of twenty-one

from purchasing a handgun and handgun ammunition from licensed retailers.

## THE HANDGUN BAN IS UNCONSTITUTIONAL

47.    The Second Amendment guarantees the individual right "to keep and bear arms."
       *See also Heller*, 554 U.S. at 595.

48.    This is especially true when it comes to handguns, which the Supreme Court has
       explicitly recognized as "the quintessential self-defense weapon." *Heller*, 554
       U.S. at 629.

49.    The fundamental right to keep and bear arms protected by the Second
       Amendment secures the right to purchase handguns and handgun ammunition for
       self-defense and other lawful purposes. These protections extend in full to all law-
       abiding, responsible adults aged eighteen and older.

50.    The Handgun Ban impermissibly infringes upon the right to keep and bear arms
       of all law-abiding individuals aged 18 to 20, as well as the concomitant rights of
       all FFLs and entities who would otherwise be able to lawfully engage in the sale
       of handguns to such individuals but for the ban.

51.    *Heller* demonstrated—through its analysis of the Second Amendment's text,
       supported and informed by our Nation's history and tradition—that severe
       restrictions on the possession of handguns for self-defense must be held
       categorically unconstitutional, rather than subject to interest balancing.

52.    The analysis must be "guided by the principle that '[t]he Constitution was written
       to be understood by the voters; its words and phrases were used in their normal
       and ordinary as distinguished from technical meaning.'" *Heller*, 554 U.S. at 576
       (quoting *United States v. Sprague*, 282 U.S. 716, 731 (1931)). We look to "the
       historical background of the Second Amendment" because "it has always been

14

widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right." *Id.* at 592.

53. American history and tradition confirm that all law-abiding adults, including those under the age of twenty-one, were understood to have full Second Amendment rights in the founding era.

54. Indeed, over 250 colonial and founding-era militia statutes throughout the seventeenth and eighteenth centuries mandated that persons aged eighteen to twenty acquire and keep arms in order to serve in the militia and otherwise protect their communities. *See generally* David Kopel & Joseph Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. ILL. U. L.J. 495 (2019) (providing over 200 militia statutes).

55. Many statutes unrelated to militia service also required adults under the age of twenty-one to keep and carry arms. *Id.*

56. In contrast, no colonial or founding era law restricted the right of law-abiding adults under the age of twenty-one to acquire or possess arms.

57. Only months after the Second Amendment was ratified, Congress took steps to "provide for organizing, arming, and disciplining, the Militia" (U.S. Const. art. I, § 8, cl. 16), by enacting the Militia Act of 1792, requiring that every male citizen of each respective state, "who is or shall be of the age of eighteen years, and under the age of forty-five years … shall severally and respectively be enrolled in the militia[.]"

58. In 1790, Secretary of War Henry Knox submitted a militia plan to Congress stating that "all men of the legal military age should be armed," and that "[t]he

15

period of life in which military service shall be required of [citizens] [was] to commence at eighteen." 1 Annals of Cong., app. 2141, 2145-2146.[5]

59.  Representative Jackson agreed "that from *eighteen to twenty-one* was found to be the best age to make soldiers of." Annals of Cong., app. 2141, 2145-2146. (emphasis added). Eighteen was the age that George Washington recommended for militia enrollment. 26 The Writings of George Washington 389 (John C. Fitzpatrick ed., 1938).

60.  The colonial and founding-era laws and customs provide irrefutable evidence that adults under the age of twenty-one had the same Second Amendment rights as adults over twenty-one years of age at the time the Second Amendment was ratified.

61.  *Heller* may not have "clarif[ied] the entire field" of Second Amendment analysis, 554 U.S. at 634, but it surely foreclosed any argument that the Second Amendment does not protect individuals who, at the time of ratification, were not only authorized but *required* by both state and federal law to keep and bear arms, *see id.* at 625 (concluding with "our adoption of the original understanding of the Second Amendment").

62.  While the right protected by the Second Amendment is by no means, and could not be, limited to militia service, "the threat that the new Federal Government would destroy the citizens' militia by taking away their arms was the reason that the right … was codified in the written Constitution." *Heller*, 554 U.S. at 559.

63.  Thus, there is and never has been any constitutionally grounded basis for

---

[5] The Annals of Congress may be viewed online at https://memory.loc.gov/cgi-bin/ampage.

restricting the rights of law-abiding adults over eighteen yet under twenty-one years of age who are eligible to serve in the military and to die for their country.

64. It is clear that the text of the Constitution itself, as informed by our Nation's history and tradition and the Supreme Court's precedents, protects the right of adults eighteen years of age, but under age twenty-one—like Individual Plaintiffs Reese, Granich, and Naquin, and Institutional Plaintiffs FPC, SAF, and LSA's members—to acquire, keep, and bear handguns for lawful purposes, including but not limited to self-defense, sport, and hunting, just like law-abiding adults who are aged twenty-one and older.

65. The handgun is a ubiquitous armament in American society and is owned by millions of law-abiding citizens for lawful purposes. Handguns are neither "unusual" nor "dangerous" as those terms are used in *Heller*.

66. The Second Amendment right fully extends to handguns, such as those that Plaintiffs and other similarly situated adults would lawfully, *inter alia*, purchase, possess, keep, bear, and practice proficiency with but for the Handgun Ban and Defendants' enforcement of it.

67. The Handgun Ban is flatly unconstitutional under the Second Amendment and *Heller*.

<u>**COUNT I – THE HANDGUN BAN IS UNCONSTITUTIONAL**</u>
<u>**FACIALLY AND AS APPLIED TO ALL PLAINTIFFS**</u>
<u>**UNDER THE SECOND AMENDMENT**</u>
**(U.S CONST., AMEND. II)**
**(All Plaintiffs v. Defendants)**

71. The foregoing paragraphs are re-incorporated herein as if set forth in full.

72. Title 18 U.S.C. §§ 922(b)(l) and 922(c)(1), 27 C.F.R. §§ 478.99(b)(l), 478.124(a),

478.96(b), and the related regulations, policies, practices, and customs designed to implement the same, and the Defendants' enforcement of them, prohibit federally licensed firearms dealers from selling handguns and handgun ammunition to the large class of law-abiding, responsible, and otherwise-eligible adults aged between eighteen to twenty-one.

73.   As a direct consequence of the Handgun Ban, individuals in this class are unable to exercise their right to purchase handguns from FFLs, and handgun ammunition from lawful retailers, for self-defense and all lawful purposes protected under the Second Amendment.

74.   Consequently, the Handgun Ban unconstitutionally infringes and imposes an impermissible burden upon the Second Amendment rights of Individual Plaintiffs and similarly situated members of Institutional Plaintiffs.

75.   Even if the Handgun Ban were subject to means-end scrutiny, prohibiting 18-to-20-year-old adults from purchasing handguns from licensed retailers does not substantially advance a government interest in public safety. That is because the available data clearly show that 18-to-20-year-old adults commit *fewer* violent crimes than those who are 21-to-24-years-old. *See* Off. of Juvenile Justice & Delinquency Programs, *Estimated number of arrests by offense and age group, 2019, Gender: All*, U.S. DEP'T OF JUST. (Nov. 16, 2020) (showing that 18-to-20-year-olds were arrested for 41,250 violent crimes in 2019, compared to 58,850 violent-crime arrests for 21-to-24-year-olds), https://bit.ly/3eOU8Gl; Off. of Juvenile Justice & Delinquency Programs, *Arrest Rates by offense and age group, Gender: All*, U.S. DEP'T OF JUST. (Nov. 16, 2020) (showing that 320.8 out of every 100,000 18-to-20-year-olds were arrested for violent crimes in 2019,

compared to 338.9 out of every 100,000 21-to-24-year-olds). https://bit.ly/3gWR4KP. Because 18-to-20-year-old adults pose a lesser threat to public safety than individuals who are only marginally older than them, the Handgun Ban's flat prohibition on allowing 18-to-20-year-olds from purchasing handguns from FFLs cannot withstand any potentially applicable level of constitutional scrutiny.

76.    Absent a declaration that the Handgun Ban unconstitutionally precludes Individual Plaintiffs and similarly situated members of Institutional Plaintiffs from exercising their enumerated rights, Defendants will continue to enforce the same, contrary to both public policy and the Constitution of the United States, causing irreparable damage to Individual Plaintiffs and similarly situated members of Institutional Plaintiffs.

77.    Plaintiffs FPC, SAF, and LSA bring this case as public interest organizations on behalf of their adult members who are, because they are under the age if twenty-one, prohibited from lawfully purchasing handguns from FFLs as well as handgun ammunition from lawful retailers under the Handgun Ban, and on behalf their FFL members who are prohibited from conducting such sales under the Handgun Ban. All such individuals and entities would otherwise have standing to sue in their own right based on the Handgun Ban against handgun sales to these adults. The resulting injuries and interests at stake are germane to the core purposes of each entity and organization, and neither the claim asserted nor the relief requested requires participation of all the affected individual members, licensees, or business entities.

78.   As to all claims made in a representative/associational capacity herein, there are common questions of law and fact that substantially injure and adversely affect the rights, duties, and criminal liabilities of the many similarly situated adult citizens who knowingly or unknowingly are subject to the Handgun Ban. The relief sought in this action is declaratory and injunctive in nature, and the action involves matters of substantial public interest that are likely to reoccur over time with the potential of evading judicial review. Considerations of necessity, convenience, and justice justify the requested relief for the Individual and Institutional Plaintiffs in a representative/associational capacity.

79.   Plaintiffs seek a declaration that the Handgun Ban infringes upon the rights of Individual Plaintiffs Reese, Granich, and Naquin and similarly situated members of Institutional Plaintiffs FPC, SAF, and LSA, and is unconstitutional facially and as applied to them.

80.   Individual Plaintiffs and similarly situated members of Institutional Plaintiffs are presently and continuously injured by Defendants' enforcement of 18 U.S.C. § 922(b)(1) and (c)(1) and the related regulations, policies, practices, and customs underlying the Handgun Ban, insofar as they violate the Second Amendment rights of Individual Plaintiffs and similarly situated members of Institutional Plaintiffs, by prohibiting licensed dealers from conducting sales of handguns to adults aged eighteen to twenty.

81.   If not enjoined by this Court, Defendants will continue to enforce 18 U.S.C. § 922(b)(1) and (c)(1) and the related regulations, policies, practices, and customs underlying the Handgun Ban in derogation of Individual Plaintiffs' constitutional rights and of all those similarly situated members of Institutional Plaintiffs.

20

Plaintiffs and the class of individuals and entities on whose behalf they bring this case have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs, and the class of individuals and entities on whose behalf they bring this case, because they are unable to engage in constitutionally protected activity due to the Handgun Ban.

82. For the foregoing reasons, Plaintiffs request declaratory and injunctive relief as hereinafter prayed for.

## COUNT II – THE HANDGUN BAN IS UNCONSTITUTIONAL UNDER THE SECOND AMENDMENT AS APPLIED TO 18-TO-21-YEAR-OLD WOMEN

### (U.S. CONST., AMEND. II)
### (Plaintiffs Naquin, FPC, SAF, and LSA v. Defendants)

83. The foregoing paragraphs are re-incorporated herein as if set forth in full.

84. As detailed above, The Handgun Ban prohibits law-abiding adults between the ages of 18 and 21 from purchasing handguns from authorized retailers.

85. Even if constitutional on its face, this ban violates the Second Amendment rights of Plaintiff Naquin and all other similarly situated female members of Institutional Plaintiffs FPC, SAF, and LSA between the ages of 18 and 21. The Government's claimed interests in promoting public safety or the general welfare through the Handgun Ban has no basis as applied to 18-to-20-year-old women.

86. In 2019, for example, 21-to-24-year-old men were arrested for homicide over *ten times* more often than 18-to-20-year-old women. *Compare* Off. of Juvenile Justice & Delinquency Programs, *Estimated number of arrests by offense and age group, 2019, Gender: Males*, U.S. DEP'T OF JUST. (Nov. 16, 2020), https://bit.ly/3reYudS

(1,620 murder or nonnegligent manslaughters), *with* Off. of Juvenile Justice & Delinquency Programs, *Estimated number of arrests by offense and age group, 2019 Gender: Females*, U.S. DEP'T OF JUST. (Nov. 16, 2020), https://bit.ly/3fcZwoF (120 murders or nonnegligent manslaughters). And 21-24-year-old men were arrested for violent crimes of any sort over *five times* more often than 18-to-20-year-old women. *Compare* Off. of Juvenile Justice & Delinquency Programs, *Arrests by offense and age group: 2019, Gender: Males*, U.S. DEP'T OF JUST. (Nov. 16, 2020), https://bit.ly/31yvZ0h (45,260 21-24-year-old men arrested for violent crimes in 2019); *with* Off. of Juvenile Justice & Delinquency Programs, *Arrests by offense and age group: 2019, Gender: Females*, U.S. DEP'T OF JUST. (Nov. 16, 2020), https://bit.ly/3gSy2p1(8,400 18-20-year-old women arrested for violent crimes in 2019). Absolutely zero public safety rationale exists for restricting the Second Amendment rights of 18-to-20-year-old women more severely than 21-to-24-year-old men.

87.     Women also are more likely than men to be victimized by violent criminals, heightening the need to *promote* their access to handguns in the lawful exercise of their constitutional right to self-defense. In 2018, women perpetrated only 17.6 percent of violent incidents, whereas men perpetrated 86.3 percent,[6] and women were victims of 57.7 percent of violent incidents. Bureau of Just. Stats., *Criminal Victimization, 2018 – Supplemental Tables* 1 tbl. 12a, U.S. DEP'T OF JUST. (July 2020), https://bit.ly/3lJ8ISA.

88.     18-to-20-year-old women also are exceedingly unlikely to commit a violent crime.

---

[6] Only 13.7 percent of violent incidents during this period were committed by female offenders, while 82.4 percent were committed by male offenders. The remaining 3.9

In 2019, for example, barely more than one-tenth of one percent of 18-to-20-year-old women were arrested for a violent offense. *See* Off. of Juvenile Justice & Delinquency Programs, *Arrest rates by offense and age group, 2019, Gender: Females*, U.S. Dep't of Just. (Nov. 16, 2020), https://bit.ly/3173Kph. (133.6 out of 100,000 18-to-20-year-old women arrested for violent crime).

89.     The Government has not and cannot provide any legitimate justification for prohibiting law-abiding, otherwise statutorily eligible 18-to-20-year-old women from purchasing handguns and handgun ammunition from authorized retailers..

90.     Without any legitimate justification, much less one of a "compelling" or "substantial" nature as required to survive heightened scrutiny, the Government's Handgun Ban is unconstitutional, void, and invalid as applied to women between the ages of 18 and 21, and Defendants' active enforcement of it through the related regulations, policies, practices, and customs challenged herein constitutes an actionable violation of the Second Amendment redressable through the relief Plaintiffs seek in this Complaint.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment in their favor and against Defendants as follows:

A.     Declare that 18 U.S.C. §§ 922(b)(l) and (c)(1), their derivative regulations, and all related laws, policies, enforcement practices, and customs underlying the Handgun Ban, as well as Defendants' enforcement of same, violate the right to keep and bear arms secured by the Second Amendment to the United States

---

percent were committed by both male and female offenders *Id.*

Constitution both facially and, alternatively, as-applied to 18-to-20-year-old women;

B.    Preliminarily and permanently enjoin the Defendants, their officers, agents, servants, employees, all persons in active concert or participation with them, and all who have notice of the injunction, from enforcing 18 U.S.C. §§ 922(b)(l) and (c)(1), their derivative regulations, and all related laws, policies, enforcement practices, and customs underlying the Handgun Ban, against Individual Plaintiffs and all similarly situated Institutional Plaintiffs' members and, alternatively, all Institutional Plaintiffs' female members;

C.    Award Plaintiffs nominal damages for constitutional injuries caused by Defendants Lombardo's and Garland's enforcement of the Handgun Ban and resulting deprivation of Plaintiffs' Second Amendment rights;

D.    Award costs and attorney fees and expenses to the maximum extent permitted under 28 U.S.C. § 2412 and any/all other applicable laws; and,

E.    Grant such other and further relief as the Court deems just and proper.

Respectfully submitted, this 5th day of May 2021.

/s/ George J. Armbruster III
Armbruster & Associates, APLC
332 E. Farrel Road, Suite D
Lafayette, LA 70508
Phone: 337-889-5511
Fax: 337-889-5512
Email: george@arm-assoc.com
Local Counsel

/s/ Raymond M. DiGuiseppe
Raymond M. DiGuiseppe - T.A.
THE DiGUISEPPE LAW FIRM, P.C.
4320 Southport-Supply Road, Suite 300

Southport, NC 28461
Phone: 910-713-8804
Fax: 910-672-7705
Email: law.rmd@gmail.com
Admitted *Pro Hac Vice*

/s/ Adam Kraut
Adam Kraut
FIREARMS POLICY COALITION
1215 K Street, 17th Floor
Sacramento, CA 95814
Phone: (916) 476-2342
Email: akraut@fpclaw.org
Admitted *Pro Hac Vice*

/s/ Joseph Greenlee
Joseph Greenlee
FIREARMS POLICY COALITION
1215 K Street, 17th Floor
Sacramento, CA 95814
Phone: (916) 438-9237
Email: jgr@fpclaw.org
Admitted *Pro Hac Vice*

/s/ John W. Dillon
John W. Dillon
DILLON LAW GROUP APC
2647 Gateway Road
Carlsbad, CA 92009
Phone: (760) 642-7150
Fax: (760) 642-7151
Email: jdillon@dillonlawgp.com
Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*