# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

CALEB REESE *et al.*,                              )
                                                   )     **Civil Action No. 6:20-cv-01438**
      Plaintiffs,                    )
                                                   )
v.                                                 )
                                                   )
BUREAU OF ALCOHOL, TOBACCO,                        )
FIREARMS AND EXPLOSIVES *et al.*,                  )
                                                   )
      Defendants.                    )
_____)

### DEFENDANTS' COMBINED REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND OPPOSITION BRIEF TO <u>PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT</u>

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ARGUMENT .................................................................................................... 2

I.    The Court Should Dismiss for Lack of Subject Matter Jurisdiction Because Plaintiffs Assert at Most Only a Self-Inflicted Injury ........................................ 2

II.   The Court Should Enter Summary Judgment for Defendants, and Deny Plaintiffs' Cross-Motion for Summary Judgment ................................................. 4

       A.    Plaintiffs Concede That Binding Fifth Circuit Precedent Forecloses Count I, and Have Presented No Basis for Reconsideration of That Precedent ................ 4

       B.    The Court Should Enter Summary Judgment for Defendants on Count II ........... 10

              1.    Count II Is Also Foreclosed by Binding Precedent .................................... 10

              2.    Even if Count II May Be Asserted, It Has No Merit ................................. 12

CONCLUSION .................................................................................................. 19

i

## TABLE OF AUTHORITIES

**Cases**

*Ass'n of New Jersey Rifle & Pistol Clubs v. Att'y Gen. New Jersey*,
   910 F.3d 106 (3d Cir. 2018) ................................................................. 8

*Binderup v. Att'y Gen.*,
   836 F.3d 336 (3d Cir. 2016) ................................................................. 11

*Bonidy v. U.S. Postal Serv.*,
   790 F.3d 1121 (10th Cir. 2015) ........................................................... 5

*Bucklew v. Precythe*,
   139 S. Ct. 1112 (2019) ........................................................................ 11

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ................................................................................ 10

*Cameron Cty. Hous. Auth. v. City of Port Isabel*,
   997 F.3d 619 (5th Cir. 2021) ............................................................... 2

*Catholic Leadership Coal. of Texas v. Reisman*,
   764 F.3d 409 (5th Cir. 2014) ............................................................... 10

*Clapper v. Amnesty Int'l. USA*,
   568 U.S. 398 (2013) ......................................................................... 2, 4

*Craig v. Boren*,
   429 U.S. 190 (1976) ............................................................................ 15

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ......................................................................... 6, 7

*Exelon Wind 1, L.L.C. v. Nelson*,
   766 F.3d 380 (5th Cir. 2014) ............................................................... 5

*Ezell v. City of Chicago*,
   651 F.3d 684 (7th Cir. 2011) ............................................................... 5

*Frontiero v. Richardson*,
   411 U.S. 677 (1973) ............................................................................ 15

*Georgia v. Public.Resource.Org, Inc.*,
   140 S. Ct. 1498 (2020) ........................................................................ 5

*GeorgiaCarry.Org, Inc. v. Georgia*,
   687 F.3d 1244 (11th Cir. 2012) ................................................................. 5

*Gould v. Morgan*,
   907 F.3d 659 (1st Cir. 2018) ..................................................................... 5

*Heller v. Dist. of Columbia ("Heller II")*,
   670 F.3d 1244 (D.C. Cir. 2011) ............................................................ 5, 18

*Horsley v. Trame*,
   808 F.3d 1126 (7th Cir. 2015) ....................................................... 11, 16, 18

*In re Cao*,
   619 F.3d 410 (5th Cir. 2010) ........................................................... 10, 11

*In re Opinion of the Justices*,
   39 Mass. 571 (1838) ................................................................................. 6

*Jacobs v. Nat'l Drug Intelligence Ctr.*,
   548 F.3d 375 (5th Cir. 2008) .................................................................... 4

*J.E.B. v. Alabama ex rel. T.B.*,
   511 U.S. 127 (1994) .............................................................................. 14

*Kachalsky v. Cty. of Westchester*,
   701 F.3d 81 (2d Cir. 2012) ................................................................... 5, 9

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................ 2, 3

*McConnell v. Fed. Election Comm'n*,
   540 U.S. 93 (2003) ................................................................................. 3

*Murillo v. Bambrick*,
   681 F.2d 898 (3d Cir. 1982) ..................................................................... 8

*Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales*,
   468 F.3d 826 (D.C. Cir. 2006) ............................................................... 2, 3

*Nat'l Rifle Ass'n of Am., Inc. ("NRA") v. Bureau of Alcohol, Tobacco, Firearms & Explosives,
   ("ATF")*, 700 F.3d 185 (5th Cir. 2012) ........................................... *passim*

*NRA v. Swearingen*,
   No. 4:18CV137-MW/MAF, 2021 WL 2592545 (N.D. Fla. June 24, 2021) .............................. 7

*Nixon v. Shrink Missouri Gov't PAC*,
   528 U.S. 377 (2000) ................................................................................................ 18

*Orr v. Orr*,
   440 U.S. 268 (1979) ................................................................................................ 14

*Sessions v. Morales-Santana*,
   137 S. Ct. 1678 (2017) ........................................................................................... 15

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................................................. 2

*Stanton v. Stanton*,
   421 U.S. 7 (1975) .................................................................................................... 15

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) .................................................................................................. 4

*Texas Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*,
   989 F.3d 368 (5th Cir. 2021) .................................................................................... 3

*Turner Broad. Sys. v. FCC*,
   512 U.S. 622 (1994) .................................................................................................. 9

*United States v. Anderson*,
   24 F. Cas. 813 (C.C.D. Tenn. 1812) ........................................................................ 7

*United States v. Chester*,
   628 F.3d 673 (4th Cir. 2010) .................................................................................... 5

*United States v. Chovan*,
   735 F.3d 1127 (9th Cir 2013) ................................................................................... 5

*United States v. Edge Broad. Co.*,
   509 U.S. 418 (1993) ................................................................................................ 12

*United States v. Greeno*,
   679 F.3d 510 (6th Cir. 2012) .................................................................................... 5

*United States v. Luedtke*,
   589 F. Supp. 2d 1018 (E.D. Wis. 2008) ................................................................. 16

*United States v. Marzzarella*,
   614 F.3d 85 (3d Cir. 2010) ....................................................................................... 5

iv

*United States v. Scroggins,*
    599 F.3d 433 (5th Cir. 2010) ................................................................ 11

*United States v. Yancey,*
    621 F.3d 681 (7th Cir. 2010) ................................................................ 16

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ............................................................................ 12

*Warren v. Chesapeake Expl., LLC,*
    No. 3:12-CV-03581-M, 2013 WL 2233950 (N.D. Tex. May 20, 2013) ................. 5

*Weinberger v. Wiesenfeld,*
    420 U.S. 636 (1975) ............................................................................ 15

*Wengler v. Druggists Mut. Ins. Co.,*
    446 U.S. 142 (1980) ............................................................................ 14

## Legislative Materials

*Federal Firearms Act: Hearings Before the Subcomm. to Investigate Juvenile Delinquency of
    the S. Comm. on the Judiciary*, 89th Cong. 67 (1965) ............................... 9

*Juvenile Deliquency: Hearings Before the Subcomm. to Investigate Juvenile Delinquency of
    the S. Comm. on the Judiciary*, 88th Cong. 3325 (1963) ............................ 13

Second Militia Act of 1791, 2 Cong. Ch. 33, 1 Stat. 271 (1792) .................................. 6

S. Rep. No. 89-1866 (1966) ................................................................................ 13

## Statutes

18 U.S.C. § 922(g)(1) ...................................................................................... 11

## Other Authorities

James E. Bailey *et al., Risk Factors for Violent Death of Women in the Home*, 157 ARCH.
    INTERN. MED. 777 (1997) .................................................................... 18

Charles C. Branas *et al., Investigating the Link Between Gun Possession and Gun Assault*, 99
    AM. J. OF PUB. HEALTH 2034 (2009) ....................................................... 18

Jacquelyn C. Campbell *et al., Risk Factors for Femicide in Abusive Relationships*, 93 AM. J. OF
    PUB. HEALTH 1089 (2003) .................................................................... 18

Nina Gogtay *et al., Dynamic Mapping of Human Cortical Development During Childhood
    Through Early Adulthood*, 101 PROC. NAT'L ACAD. SCI. 8174 (2004) ................. 17

Ruben C. Gur *et al., Age Group and Sex Differences in Performance on a Computerized Neurocognitive Battery in Children Age 8-21*, 26 NEUROPSYCHOLOGY 251 (2012) ............... 17

David Hemenway & Deborah Azrael, *The Relative Frequency of Offensive and Defensive Gun Uses: Results from a National Survey*, 15 VIOLENCE & VICTIMS 257 (2000) ......................... 18

Matthew Miller *et al.*, *Firearm Acquisition Without Background Checks: Results of a National Survey*, 166 ANNALS OF INTERNAL MEDICINE 233 (2017) ......................................... 9

National Academy of Sciences, *Firearms and Violence: A Critical Review* (2005).................. 18

Kara E. Rudolph *et al.*, *Association Between Connecticut's Permit-to-Purchase Handgun Law and Homicides*, 105 AM. J. OF PUB. HEALTH 49 (2015)............................................. 9

Laurence Steinberg *et al.*, *Age Differences in Sensation Seeking and Impulsivity as Indexed by Behavior and Self-Report*, 44 DEV. PSYCHOL. 1764 (2008) ................................... 17

Laurence Steinberg *et al., Age Differences in Future Orientation and Delay Discounting*, 80 CHILD DEV. 28 (2009) ........................................................... 17

## INTRODUCTION

In 1968, Congress decided to further its compelling interest in combating violent crime by supplementing the states' ability to control firearms sales to persons under twenty-one. However, Congress did not wish to prevent younger individuals from owning or learning the proper usage of firearms. The legislature thus restricted the ability of federally-licensed firearms dealers to sell handguns directly to eighteen-to-twenty year olds, while allowing their parents or guardians to purchase such handguns as bona fide gifts for their children. As the Fifth Circuit held in *Nat'l Rifle Ass'n of Am., Inc. ("NRA") v. Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF")*, 700 F.3d 185 (5th Cir. 2012), Congress acted appropriately by enacting this "calibrated, compromise approach." *Id*. at 209.

The plaintiffs in this case contend that this law is inconsistent with the Constitution, both on its face and with respect to women aged eighteen to twenty. The Court should decline the invitation to strike down this longstanding regulation that is both reasonable and consistent with the right to keep and bear arms. As a threshold matter, Plaintiffs lack standing to sue because they assert at best only a self-inflicted injury. Furthermore, as Plaintiffs themselves concede, the Fifth Circuit's decision in *NRA* squarely forecloses their claim of facial unconstitutionality. Plaintiffs' challenge with respect to eighteen-to-twenty year old women is similarly barred, and in any event, Plaintiffs have presented no reason why Congress should have discriminated on the basis of sex in enacting the age qualification. The Court should therefore dismiss this case, or enter summary judgment in Defendants' favor.

**ARGUMENT**

I.      **The Court Should Dismiss for Lack of Subject Matter Jurisdiction Because Plaintiffs Assert at Most Only a Self-Inflicted Injury.**

As the parties invoking federal jurisdiction, Plaintiffs bear the burden of showing that they have standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  "[T]he irreducible constitutional minimum of standing consists of three elements[: t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted).  Because Plaintiffs have not satisfied their burden of showing that they have suffered injury in fact traceable to Defendants, the Court should dismiss for lack of subject matter jurisdiction.  *See* Mem. in Supp. of Defs.' Mot. to Dismiss Pls.' Am. Compl. or for Summ. J. at 5-8, ECF No. 33-1 ("Defs.' MSJ").

The required "causal connection between the injury and the conduct complained of" is "lacking where the plaintiff's injury is self-inflicted." *Cameron Cty. Hous. Auth. v. City of Port Isabel*, 997 F.3d 619, 623 (5th Cir. 2021); *see also Clapper v. Amnesty Int'l*, 568 U.S. 398, 416 (2013) (explaining that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves"); *Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (plaintiff lacked standing where its purported injury—uncertainty as to how to comply with an allegedly conflicting statute and regulation—easily could have been resolved by asking the relevant agency to clarify its regulation).  Here, federal law allows the individual plaintiffs' respective parents or guardians to lawfully purchase handguns directly from a licensed dealer and to give them to the individual plaintiffs as bona fide gifts.  Indeed, Plaintiff Naquin concedes that "under the law someone could purchase a handgun for me as a gift."  Mem. in Supp. of Pls.' Cross-Mot. for Summ. J., ECF No. 49-2 ("Pls.' Cross-MSJ"), App. 2.  As

Defendants have explained, because the individual plaintiffs have a legally-available means to obtain a handgun from such dealers, any supposed constitutional injury is self-inflicted.  Defs.' MSJ. at 5-8.  Because the individual plaintiffs' "alleged inability" to obtain a firearm from a licensed dealer "stems not from the operation of" the age qualification, "but from their own personal 'wish' not to . . . accept" a handgun purchased by their respective parents or guardians from a licensed dealer, "*i.e.*, their personal choice," they "fail here to allege an injury in fact that is 'fairly traceable' to" Defendants.  *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 228 (2003), *overruled on other grounds*, 558 U.S. 310 (2010).  In other words, Plaintiffs' "asserted injury appears to be largely of [their] own making" because they "ha[ve] within [their] grasp an easy means for alleviating" that asserted injury but have instead "*chosen* to remain in the lurch" by not doing so and "cannot demonstrate an injury sufficient to confer standing." *Nat'l Family Planning*, 468 F.3d at 831.[1]

And for similar reasons, the organizational plaintiffs lack associational standing because they do not identify any member without parents or guardians who may lawfully purchase a handgun directly from a licensed dealer and give to that member as a bona fide gift.  *See* Defs.' MSJ at 7.  Moreover, because the organizational plaintiffs fail to identify any member who is a licensed firearms dealer and who was allegedly frustrated from selling any particular handgun to any person, their claim of intended sales being allegedly frustrated because of the age qualification is not "concrete and particularized."  *Lujan*, 504 U.S. at 560; *see* Defs.' MSJ at 8.[2] The Court should therefore dismiss this case for lack of subject matter jurisdiction.

---

[1] As Defendants noted in their opening brief, they are mindful that the Fifth Circuit in *NRA* rejected this particular standing argument, and acknowledge its determination as binding law.  *See* Defs.' MSJ at 6 n.4.

[2] Nor does *Texas Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368 (5th Cir. 2021), cited by Plaintiffs, suggest to the contrary.  *See* Pls.' Cross-MSJ at 8.  That case challenged a regulation completely prohibiting the manufacture, sale, or importation of a particular item: namely, any children's toy or child care article containing a specified amount of particular chemicals.  *See* 989 F.3d at 372, 376.  The "threat of reduced sales"

## II.     The Court Should Enter Summary Judgment for Defendants, and Deny Plaintiffs' Cross-Motion for Summary Judgment.

### A.     Plaintiffs Concede That Binding Fifth Circuit Precedent Forecloses Count I, and Have Presented No Basis for Reconsideration of That Precedent.

The first count of Plaintiffs' complaint alleges that the age qualification is facially inconsistent with the Second Amendment.  Amended Compl. ¶¶ 71-82, ECF No. 29 ("Compl.").  Plaintiffs wisely "concede that this Court must dismiss that claim" because the Fifth Circuit's binding decision in *NRA* squarely forecloses it.  Pls.' Cross-MSJ at 2.  However, despite Plaintiffs' acknowledgement that "this Court is bound to apply" the Fifth Circuit's decision, they nonetheless present three arguments supporting their contention that *NRA* "should be overruled by the en banc Fifth Circuit."  *Id*. at 10.  Because only the Court of Appeals sitting *en banc* or the Supreme Court may overturn a Fifth Circuit decision, *see Jacobs v. Nat'l Drug Intelligence Ctr*., 548 F.3d 375, 378 (5th Cir. 2008), there is no basis for the Court to entertain these arguments.

However, in an abundance of caution, and to prevent any claim of waiver, Defendants will respond briefly to these three arguments.  First, Plaintiffs contend that the Fifth Circuit erred in adopting the two-prong test utilized by every other Court of Appeals to analyze Second Amendment claims.  Pls.' Cross-MSJ at 8-13.  Second, Plaintiffs express disagreement with the Fifth Circuit's determination that "considerable evidence" suggests that "burdening the conduct at issue—the ability of 18-to-20-year-olds to purchase handguns from [licensed dealers]—is

---

identified by the Fifth Circuit thus stemmed from the complete inability of an identified manufacturer to produce such items for sale.  *See id*. at 377.  No such threat exists here.  First, the organizational plaintiffs have failed to identify any particular member faced with a concrete threat of lost sales.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (organization seeking to establish associational standing must "make specific allegations establishing that at least one *identified* member ha[s] suffered or would suffer harm") (emphasis added).  Second, such a threat is purely speculative in the abstract because it depends on a "speculative chain of possibilities," *Clapper*, 568 U.S. at 414, *viz*., that a particular dealer-member was unable to sell a handgun to a particular underage individual, and that that individual's parents or guardians refused to purchase the handgun to provide to her or him as a gift.  *See id*. at 414 n.5 (explaining that when "pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm[, p]laintiffs cannot rely on speculation about the unfettered choices made by independent actors not before the court") (citation omitted).

consistent with a longstanding, historical tradition, which suggests that the conduct at issue falls outside the Second Amendment's protection."  *NRA*, 700 F.3d at 203; *see* Pls.' Cross-MSJ at 13-16.  Third, Plaintiffs disagree with the Fifth Circuit's holding that the age qualification satisfies intermediate scrutiny.  Pls.' Cross-MSJ at 17-18.  As demonstrated below, none of these arguments has any persuasive force, even if the Court were to reach them (which it should not).[3]

The Fifth Circuit in *NRA* correctly noted that "[a] two-step inquiry has emerged as the prevailing approach" in the Courts of Appeals for analyzing Second Amendment claims.  *NRA*, 700 F.3d at 194.  Under this analysis, "the first step is to determine whether the challenged law impinges upon a right protected by the Second Amendment—that is, whether the law regulates conduct that falls within the scope of the Second Amendment's guarantee; the second step is to determine whether to apply intermediate or strict scrutiny to the law, and then to determine whether the law survives the proper level of scrutiny."  *Id.* (citing authority).  Plaintiffs' contention that the Fifth Circuit erred in adopting this analytical framework runs contrary to every Court of Appeals that has considered the issue.[4]  The fact that at least ten Courts of Appeals have seen fit to adopt this same framework belies Plaintiffs' assertion that the Fifth Circuit committed legal error.

---

[3] Plaintiffs' arguments rely heavily on comments in an opinion dissenting from the denial of *en banc* rehearing.  "A dissenting opinion is, of course, not binding," *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 397 n.15 (5th Cir. 2014), including opinions dissenting from a denial of rehearing.  *See Warren v. Chesapeake Expl.*, No. 3:12-CV-03581-M, 2013 WL 2233950, at *2 (N.D. Tex. May 20, 2013), *aff'd as modified*, 759 F.3d 413 (5th Cir. 2014).  Thus, "comments in a dissenting opinion about legal principles and precedents are just that: comments in a dissenting opinion."  *Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498, 1511 (2020) (citation omitted).

[4] *See, e.g.*, *Gould v. Morgan*, 907 F.3d 659, 669-71 (1st Cir. 2018), *cert. denied*, 141 S. Ct. 108 (2020); *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1126 (10th Cir. 2015); *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013); *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1261 n.34 (11th Cir. 2012); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012); *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1256-57 (D.C. Cir. 2011) ("*Heller II*"); *Ezell v. City of Chicago*, 651 F.3d 684, 702-03 (7th Cir. 2011); *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010).

Furthermore, as explained previously, *NRA* correctly determined that limiting the ability of eighteen-to-twenty year olds to purchase handguns from licensed dealers is consistent with longstanding historical tradition, and with conditions and qualifications on the commercial sale of firearms.  *See* Defs.' MSJ at 10, 12-21.  Plaintiffs' contrary contentions, Pls.' Cross-MSJ at 13-16, have no merit.

Initially, the right at issue protected by the Second Amendment has "*nothing whatever* to do with service in a militia."  *District of Columbia v. Heller*, 554 U.S. 570, 593 (2009) (emphasis added).  It therefore does not follow from the fact that some states might have prescribed eighteen as a minimum age for militia service that Congress may not now prohibit the direct sale of handguns to eighteen-to-twenty year olds by licensed dealers.  And the historical record does not suggest that in early America, minors under twenty-one were required to own their own firearms.  Rather, during the Founding Era, Members of Congress acknowledged that those under twenty-one would have trouble providing their own firearms unless their parents or guardians supplied them.  *See* Defs.' MSJ at 19 n.8; *see also* Ex. 1 (listing state laws contemplating that parents would furnish minor children with firearms for their militia duty).

Moreover, it is not correct that when the Second Amendment was enacted or shortly thereafter, every state prescribed eighteen as the minimum age for militia service.  *See* Pls.' Cross-MSJ at 15.  Rather, the Second Militia Act of 1792, 2 Cong. Ch. 33, 1 Stat. 271 (1792), "gave States discretion to impose age qualifications on service, and several States chose to enroll only persons age 21 or over, or required parental consent for persons under 21."  *NRA*, 700 F.3d at 204 n.17; *see also In re Opinion of the Justices*, 39 Mass. 571, 576 (1838) ("[I]t is competent for the State legislature by law to exempt from enrolment in the militia, all persons under twenty-one and over thirty years of age.").  A number of states chose to enroll only individuals over

6

twenty-one in their respective militias, or to require parental consent before such individuals could serve.  *See* Ex. 2.[5]  As a result of these states' exemptions, eighteen was not the minimum age they prescribed for militia service.  Thus, Plaintiffs have not demonstrated that restricting the direct sale of handguns to persons under twenty-one is inconsistent with historical understandings of the Second Amendment right.  *See also NRA v. Swearingen*, No. 4:18CV137-MW/MAF, 2021 WL 2592545, at *6-17 (N.D. Fla. June 24, 2021) (rejecting Second Amendment challenge to state law prohibiting firearms purchase by persons under twenty-one under first step of the two-step framework).

Furthermore, the mere fact that the age qualification regulates the purchase of handguns does not render it constitutionally impermissible.  Defs.' MSJ at 21-23.  Plaintiffs' interpretation of *Heller* as allowing for an unconditional right to purchase handguns, Pls.' Cross-MSJ at 16, cannot be squared with the Supreme Court's explanation that "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful regulatory measures." *Heller*, 554 U.S. at 626-27 & n.26.  Plaintiffs further err in contending that the age qualification "cut[s the] age group" of eighteen to twenty-year olds "out of the commercial market entirely." *Id*.  In fact, persons in this age group "may acquire handguns from responsible parents or guardians" who may commercially purchase handguns directly from a licensed dealer to give to them as a bona fide gift.  *NRA*, 700 F.3d at 207.

Finally, while Plaintiffs criticize the Fifth Circuit's decision to apply intermediate scrutiny to the age qualification, Pls.' Cross-MSJ at 17, they fail to address the three factors that justified that decision.  *See* Defs.' MSJ at 11 (quoting *NRA*, 700 F.3d at 206-07).  Moreover,

---

[5] *See also United States v. Anderson*, 24 F. Cas. 813 (C.C.D. Tenn. 1812) (No. 14,449) (granting parent's habeas petition seeking return of eighteen-year-old who had joined the military without parental consent even though he was under twenty-one).

while Plaintiffs may "prefer[], and in fact insist[], on a particular type of evidence, namely empirical studies demonstrating a causal link between" the enactment of the age qualification and a reduction in violent crime, "[t]his is not required." *Ass'n of New Jersey Rifle & Pistol Clubs v. Att'y Gen. New Jersey*, 910 F.3d 106, 120 n.24 (3d Cir. 2018).  The Fifth Circuit in *NRA* analyzed "evidence showing that Congress was focused on a particular problem: *young persons under 21*, who are immature and prone to violence, easily accessing *handguns*, which facilitate violent crime, primarily by way of [licensed dealers]" and that it accordingly "restricted the ability of young persons under 21 to purchase handguns from" such dealers.  700 F.3d at 208. The Fifth Circuit held that "Congress, in turn, reasonably tailored a solution to the particular problem" and "deliberately adopted a calibrated, compromise approach" under which it "restricted the ability of persons under 21 to purchase handguns from [licensed dealers], while allowing . . . 18-to-20-year old persons to purchase long-guns, . . . to acquire handguns from parents or guardians, and . . . to possess handguns and long-guns." *Id*. at 209.  Congress' findings are "entitled to some deference" because "Congress is far better equipped than the judiciary to make predictive judgments and amass and evaluate the vast amounts of data bearing upon complex and dynamic issues." *Id*. at 210 n.21 (citation omitted).  No more is required under intermediate scrutiny.

Plaintiffs thus incorrectly contend, in effect, that intermediate scrutiny imposes "the obligation constantly to reassess the continuing validity of the factual premises underlying each piece of legislation enacted over the years." *Murillo v. Bambrick*, 681 F.2d 898, 911 (3d Cir. 1982); *see* Pls.' Cross-MSJ at 17-18.  "[T]he Constitution neither demands nor expects omniscient oversight on the part of a legislature once those laws have taken effect." *Murillo*, 681

F.2d at 911.[6]  Plaintiffs fare no better in contending that the Fifth Circuit should have invalidated

the age qualification because it does not completely prevent persons between eighteen and

twenty from purchasing handguns.  Pls.' Cross-MSJ at 17-18.[7]  Congress's investigations

revealed that "almost all of these firearms[] are put into the hands of juveniles by importers,

manufacturers, and dealers who operate under licenses issued by the Federal Government."

*Federal Firearms Act: Hearings Before the Subcomm. to Investigate Juvenile Delinquency of the*

*S. Comm. on the Judiciary*, 89th Cong. 67 (1965) (testimony of Sheldon S. Cohen), and most

firearms purchases are still made from licensed dealers.  *See* Matthew Miller *et al.*, *Firearm*

*Acquisition Without Background Checks: Results of a National Survey*, 166 ANNALS OF

INTERNAL MEDICINE 233-39 (2017) (finding that only 22% of firearms owners who reported

obtaining a firearm within the prior two years reporting doing so without the background check

required for purchases from licensed dealers).  And "[i]t is well-settled that 'a statute is not

invalid under the Constitution because it might have gone farther than it did, that a legislature

need not strike at all evils at the same time, and that reform may take one step at a time,

---

[6] In any event, Plaintiffs mistakenly characterize *NRA* as having "conced[ed]" that "the share of violent crime arrests among the 18-to-20 year age group has increased."  Pls.' Cross-MSJ at 17 (citation omitted).  The Fifth Circuit made no such "conce[ssion]," but instead correctly noted that "[t]he threat posed by 18-to-20-year-olds with easy access to handguns endures" and that "[r]ecent data confirm that preventing handguns from easily falling into the hands of 18-to-20-year-olds remains critical to public safety."  *NRA*, 700 F.3d at 209, 210.  And for the reasons explained in the text, Plaintiffs misplace their reliance on a periodical article's opinion regarding the age qualification's alleged effect because "courts must accord substantial deference to the predictive judgments of Congress," *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 665 (1994), particularly "[i]n the context of firearm regulation," *Kachalsky*, 701 F.3d at 97, where "sensitive public policy judgments" must be made "concerning the dangers in carrying firearms and the manner to combat those risks."  *Id*.  In any event, recent empirical literature supports a correlation between increasing the minimum age to purchase firearms from eighteen to twenty-one, and a decrease in violent crime.  *See* Kara E. Rudolph *et al.*, *Association Between Connecticut's Permit-to-Purchase Handgun Law and Homicides*, 105 AM. J. OF PUB. HEALTH 49-54 (2015) (finding significant decrease in firearm homicides associated with implementation of state law requiring permit to purchase firearms and increasing minimum age of handgun purchase from eighteen to twenty-one).

[7] Moreover, Plaintiffs' contention that the age qualification is constitutionally impermissible because it is fatally underinclusive is difficult to square with their assertion that the law is impermissibly burdensome.

9

addressing itself to the phase of the problem which seems most acute to the legislative mind.'" *NRA*, 700 F.3d at 211 (quoting *Buckley v. Valeo*, 424 U.S. 1, 105 (1976)).

In sum, none of Plaintiffs' arguments that the Fifth Circuit erred in *NRA* has any merit. Thus, even if the Court were to entertain such arguments—which it should not—it should squarely reject them.

**B.     The Court Should Enter Summary Judgment for Defendants on Count II.**

Count II purports to assert a claim that the age qualification is inconsistent with the Second Amendment with respect to Plaintiff Naquin and other female members of the organizational plaintiffs between the ages of eighteen and twenty.  Compl. ¶¶ 83-90.  Like Count I, this claim is foreclosed by the Fifth Circuit's *NRA* decision.  In any event, it lacks merit.

**1.     Count II Is Also Foreclosed by Binding Precedent.**

As explained in Defendants' opening brief, the Fifth Circuit's decision in *NRA* bars Count II.  Defs.' MSJ at 24-25.  In response, Plaintiffs observe that "the facial upholding of a law does not prevent future as-applied challenges."  Pls.' Cross-MSJ at 22 (quoting *In re Cao*, 619 F.3d 410, 430 (5th Cir. 2010)).  That observation is correct, but "to categorize a challenge as facial or as-applied [courts] look to see whether the claim and the relief that would follow reach beyond the particular circumstances of the plaintiffs" and "[i]f so, regardless of how the challenge is labeled by a plaintiff, they must therefore satisfy [the] standards for a facial challenge to the extent of that reach."  *Catholic Leadership Coal. of Texas v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014) (citation and internal punctuation omitted).  Here, Plaintiffs do not seek relief limited to the individual or organizational plaintiffs, but instead have requested a "[d]eclar[ation]" that the age qualification is unconstitutional "both facially and, alternatively, *as-applied to 18-to-20-year-old women*."  Compl. at 23 (emphasis added).  Plaintiffs are

therefore not asserting an as-applied challenge, and must satisfy the Fifth Circuit's standards for a facial challenge to the extent of their requested relief.  *See also Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019) (because "[a] facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications," "classifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding breadth of the remedy, but it does not speak at all to the substantive rule of law necessary to establish a constitutional violation").

In arguing to the contrary, Plaintiffs misplace their reliance on the Third Circuit's opinion in *Binderup v. Att'y Gen.*, 836 F.3d 336 (3d Cir. 2016).  *See* Pls.' Cross-MSJ at 23-24.  While it is true that *Binderup* permitted an as-applied challenge to the federal prohibition on felon possession of firearms, 18 U.S.C. § 922(g)(1), to proceed despite a facial challenge to the same statute having been rejected, that opinion "stand[s] entirely alone."  *Binderup*, 836 F.3d at 387 (Fuentes, J., concurring); *see, e.g.*, *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) (holding that Second Amendment challenges to Section 922(g)(1) are barred by Fifth Circuit precedent).  The Court should similarly reject Count II of the complaint as foreclosed by *NRA*.

Moreover, "simply characterizing [a] challenge as an as-applied challenge does not make it one" because "[w]hile rejection of a facial challenge to a statute does not preclude all as-applied attacks, surely it precludes one resting upon the same asserted principle of law."  *Cao*, 619 F.3d at 430 (citations omitted).  And because "[t]he argument raised by the Plaintiffs in this case rests . . . on the same general principles rejected by the Court in" *NRA*, its "argument must fail in light of" that case.  *Id*.  After all, a named individual plaintiff in *NRA* was a woman between eighteen and twenty, and the Fifth Circuit still found the age qualification to be constitutional.  *See also Horsley v. Trame*, 808 F.3d 1126, 1129-34 (7th Cir. 2015) (upholding

11

state statute similar to federal age qualification against Second Amendment challenge brought by

woman plaintiff between eighteen and twenty).  Plaintiffs thus do not bring Count II outside the

ambit of *NRA* merely by contending that the age qualification is unconstitutional as to women

aged eighteen to twenty.

### B.    Even if Count II May Be Asserted, It Has No Merit.

In any event, the Court should enter summary judgment for Defendants on Count II

because Plaintiffs' claim lacks merit.  As explained previously, Plaintiffs cite no authority—and

Defendants are aware of none—requiring constitutional means-end scrutiny to be satisfied not

just as to the total set of persons to which a statute applies, but also as to *any possible subset* of

persons that might assert an as-applied constitutional challenge.  *See* Pls.' Cross-MSJ at 24 n.6

(arguing, without supporting authority, that if the age qualification "*generally* satisfies

intermediate scrutiny," then Defendants "must *also* satisfy intermediate scrutiny to exempt

women from" the age qualification").  Rather, in an as-applied challenge, "the validity of the

[statute] depends on the relation it bears to the overall problem the government seeks to correct,

not on the extent to which it furthers the government's interests in an individual case."  *Ward v.*

*Rock Against Racism*, 491 U.S. 781, 801 (1989); *see also United States v. Edge Broad. Co.*, 509

U.S. 418, 430-31 (1993) (explaining that when analyzing as-applied challenges, courts judge

restrictions "by the relation [they bear] to the general problem" posed, not "by the extent to

which it furthers the Government's interest in an individual case").  In an as-applied challenge,

"[i]t is readily apparent" that courts do not "limit[] the inquiry to whether the governmental

interest is directly advanced as applied to a single person or entity;" rather, the pertinent inquiry

is whether the government demonstrates "a fit between the restriction [at issue] that is not

necessarily perfect, but reasonable." *Edge Broad. Co.*, 509 U.S. at 427, 429; *see also id*. at 430

(heightened scrutiny may be satisfied even if "applying the general statutory restriction to [the plaintiff], in isolation, would no more than marginally" serve the government interest).

That standard has been satisfied here.  As the Fifth Circuit explained, in enacting the age qualification, "Congress sought to manage an important public safety problem: the ease with which young persons—including 18-to-20-year-olds—were getting their hands on handguns through [licensed dealers]."  *NRA*, 700 F.3d at 207.  "Congress conducted a multi-year investigation that revealed a causal relationship between the easy availability of firearms to young people under 21 and the rise in violent crime."  *Id*. (citations omitted).  Congress was "concerned . . . with 'minors' under the age of 21," its investigations having shown that persons under twenty-one accounted for 64 percent of the total arrests for serious crimes in the United States, as well as "35 percent of the arrests for the serious crimes of violence including murder, rape, robbery, and aggravated assault, and 21 percent of the arrests for murder."  *Id*. at 207-08 (internal citations omitted).  And Congress was concerned with violent crime committed by both women and men under twenty-one.  *See* S. Rep. No. 89-1866, at 59 (1966) (noting that in Greenville, South Carolina, in 1964, "42 teenage males and 3 teenage females were arrested and charged with carrying, shooting, pointing, or having in possession, firearms in the city of Greenville," and that during the first half of 1965, law enforcement officials had "already arrested for the same offenses . . . 26 male teenagers and 2 female teenagers"); *Juvenile Delinquency: Hearings Before the Subcomm. to Investigate Juvenile Delinquency of the S. Comm. on the Judiciary*, 88th Cong. 3325 (1963) (annual report by Los Angeles Police Department's special community problems unit, juvenile division, reported that in 1962, "there were a considerable number of female juveniles involved in assaults against policemen").

The legislative record thus supports the conclusion that "curbing violent crime perpetrated by young persons under 21—by preventing such persons from acquiring handguns from [licensed dealers]—constitutes an important government objective." *Id*. at 209 (citation omitted). And in turn, "Congress selected means that were reasonably adapted to achieving that objective." *Id*. Instead of "prohibit[ing] all persons under 21 from possessing handguns," Congress "deliberately adopted a calibrated, compromise approach" "by requiring that a parent or guardian under 21 years of age make a handgun purchase for any person under 21." *Id*. (internal citation omitted).

Thus, as the Fifth Circuit concluded, there is a "reasonable means-ends fit between the challenged federal laws and [the] important government interest" that Congress sought to further. *Id*. at 208-09. And Plaintiffs point to nothing in the legislative record suggesting that in achieving this means-end fit, Congress should have enacted legislation discriminating on the basis of sex. After all, the general presumption under principles of equal protection is that Congress should ordinarily legislate in a manner that is sex-neutral and should only deviate from that presumption when appropriately justified, rather than vice versa. *See, e.g.*, *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 135 (1994) (explaining that for decades, "this Court consistently has subjected gender-based classifications to heightened scrutiny in recognition of the real danger that government policies that professedly are based on reasonable considerations in fact may be reflective of archaic and overbroad generalizations about gender . . . .") (internal citations and punctuation omitted); *Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 151 (1980) (striking down sex-based classification where sex-neutral approach would advance the goals of the statutory scheme equally well); *Orr v. Orr*, 440 U.S. 268, 281-83 (1979) (same). Indeed, "[e]ven if stereotypes frozen into legislation have 'statistical support,' [the Supreme Court's]

14

decisions reject measures that classify unnecessarily and overbroadly by gender when more accurate and impartial lines can be drawn." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1693 (2017) (citing authority).

Consequently, as explained previously, employing a sex-specific age qualification could present equal protection problems. *See* Defs.' MSJ at 26 n.12 (citing *Craig v. Boren*, 429 U.S. 190 (1976); *Frontiero v. Richardson*, 411 U.S. 677 (1973); *Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975); *Stanton v. Stanton*, 421 U.S. 7 (1975)). Plaintiffs fail to address this line of precedent, but instead concede that if their requested relief under Count II "implicated the Equal Protection Clause, its gender distinction would be subject to intermediate scrutiny." Pls.' Cross-MSJ at 24 n.6 (citing *Craig*, 429 U.S. at 197-98). But as *Craig*, *Frontiero*, *Weinberger*, *Stanton*, and similar cases demonstrate, it is reasonable for Congress to avoid making classifications that discriminate on the basis of sex, and instead to utilize a uniform minimum age for the direct purchase of handguns from licensed dealers that does not entail such discrimination.

And even aside from equal protection problems that could result from excluding women from the age qualification, their inclusion furthers the government's compelling interest in combating violent crime. In the years since the age qualification's passage, the available evidence has underscored Congress's concerns about violent crime committed by both men and women under twenty-one. A 2011 Department of Justice report concluded that between 1980 and 2008, "[y]oung adults (18 to 24 years old) had the highest [homicide] offending rate in each racial and sex category." U.S. Dep't of Justice, Bureau of Justice Statistics, *Homicide Trends in the United States, 1980-2008*, at 15 (Nov. 2011).[8] The most recent FBI Uniform Crime Report shows that in 2019, compared with women of all ages, women between eighteen to twenty-four

---

[8] https://bjs.ojp.gov/content/pub/pdf/htus8008.pdf

women are arrested at the highest rates (18 – 2.5%; 19 – 2.9%; 20 – 2.9%; 21 – 2.9%; 22 – 3.0%; 23 – 3.0%; 24 – 3.1%). *See* Crime in the United States 2019, Table 40: Arrests (Females, by Age).[9]  Similarly, when compared with women of all ages, eighteen- to twenty-four year old women have the highest rate of arrests for violent crime—defined as murder and non-negligent manslaughter, rape, robbery, and aggravated assault (18 – 2.5%; 19 – 2.8%; 20 – 2.9%; 21 – 3.2%; 22 – 3.2%; 23 – 3.3%; 24 – 3.4%). *Id*.[10]  This evidence demonstrates that a disproportionate share of violent offenses—and overall criminal offenses—are committed by women between eighteen and twenty.

And in the present context, examining comparative arrest rates for different ages of women is more pertinent than—as Plaintiffs would prefer—examining the percentage of all women between eighteen and twenty-one arrested for violent crime.  Pls.' Cross-MSJ at 19; *see also id*. at 24 n.6.  After all, "[a]s [courts have] explained in a different context, most felons are nonviolent, but someone with a felony conviction in his record is more likely than a nonfelon to engage in illegal and violent gun use."  *United States v. Yancey*, 621 F.3d 681, 684 (7th Cir. 2010) (citation omitted); *see also United States v. Luedtke*, 589 F. Supp. 2d 1018, 1023 (E.D. Wis. 2008) ("[T]here is no requirement under the Second Amendment that only those persons found imminently likely to engage in gun violence may be dispossessed of their firearms."); *Horsley*, 808 F.3d at 1132-33 (analyzing comparative arrest rates for different ages of persons in upholding state minimum age qualification for firearms possession, and explaining that "[t]hese crime figures reflect important benefits to the public interest in limiting firearm possession by

---

[9] https://ucr.fbi.gov/crime-in-the.u.s/2019/crime-in-the.u.s.-2019/topic-pages/tables/table-40

[10] Plaintiffs may respond by contending that Congress should have decided to include persons between twenty-one and twenty-four within the age qualification.  Such a response would have no merit, as "[i]t is well-settled that 'a statute is not invalid under the Constitution because it might have gone farther than it did.'"  *NRA*, 700 F.3d at 211 (citation omitted).

persons in the age group that is the subject of the challenged statute"). Similarly, evidence suggests that as compared with women of different ages, women between eighteen and twenty "tend to be relatively irresponsible and can be prone to violent crime." *NRA*, 700 F.3d at 206. This evidence further justifies Congress' inclusion of women within the age qualification. So too does the fact that "modern scientific research supports the commonsense notion that 18-to-20-year-olds tend to be more impulsive than young adults aged 21 and over," *NRA*, 700 F.3d at 210 n.21 (citations omitted), a conclusion that holds true for both women and men.[11]

In response, Plaintiffs contend that in enacting the age qualification, Congress should have discriminated on the basis of sex because women between eighteen and twenty are disproportionately victimized by crime. Pls.' Cross-MSJ at 19-22. Aside from the equal protection problems discussed above, the difficulty with Plaintiffs' contention is twofold.

First, Plaintiffs ignore the fact that the age qualification does not ban the possession of handguns by persons between eighteen and twenty. Rather, it allows a parent or guardian of an individual in this age group to lawfully purchase a handgun directly from a licensed dealer and gift it to that individual. The age qualification is thus "not a regulatory means that imposes 'severe burdens' because it 'does not leave open ample alternative channels'; rather it is a restriction that 'imposes only modest burdens (because it does leave open ample alternative

---

[11] *See* Ruben C. Gur *et al.*, *Age Group and Sex Differences in Performance on a Computerized Neurocognitive Battery in Children Age 8-21*, 26 NEUROPSYCHOLOGY 251, 262 (2012) (study of neurocognitive abilities in males and females between eight and twenty-one concluded that although "[s]ex differences were apparent both in overall performance and in age group related variation[, . . .] these effect sizes were small compared to age group effects"); Laurence Steinberg *et al.*, *Age Differences in Future Orientation and Delay Discounting*, 80 CHILD DEV. 28, 39 (2009) (explaining that "adolescents are less oriented to the future than are adults" and that "[t]hese age differences . . . do not vary by gender or ethnicity"); Laurence Steinberg *et al.*, *Age Differences in Sensation Seeking and Impulsivity as Indexed by Behavior and Self-Report*, 44 DEV. PSYCHOL. 1764, 1772 (2008) (concluding that although "there is a significant effect of age on impulsivity, . . . the main effects for gender and ethnicity are not significant, nor are there significant interactions between these variables and age"); Nina Gogtay *et al.*, *Dynamic Mapping of Human Cortical Development During Childhood Through Early Adulthood*, 101 PROC. NAT'L ACAD. SCI. 8174, 8177 (2004) (concluding, with respect to study of males and females between four and twenty-one, that "executive function, attention, and motor coordination (frontal lobes)" are "[l]ater to mature").

channels')."  *Horsley*, 808 F.3d at 1132 (internal punctuation omitted) (quoting *Heller II*, 670 F.3d at 1262).

Second, Plaintiffs' argument assumes that increasing the rate of handgun possession by women between eighteen and twenty will necessarily decrease the rate at which they are victimized by violent crime; indeed, Plaintiffs cite empirical studies that (they say) supports this assumption.  *See* Pls.' Cross-MSJ at 21.  As an initial matter, many studies have challenged Plaintiffs' assumption.[12]  While this Court need not resolve this ongoing empirical dispute, Plaintiffs' selective citation to the literature is insufficient to undermine the reasonableness of Congress' inclusion of women within the age qualification.  *See Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 394-95 (2000) ("invocation of academic studies" that purportedly cast doubt on government's justification for speech restriction did not undermine government's asserted justification, particularly when "[o]ther studies . . . point the other way").  More fundamentally, Plaintiffs' citation to research on the safety benefits or hazards of increased handgun usage generally is misplaced in the context of this case.  The empirical issue of whether increasing the rate of handgun possession generally enhances or diminishes public safety is a different question from whether, as a constitutional matter, Congress appropriately included women within the age qualification.  Congress "found that the ease with which young persons under 21"—including

---

[12] *See, e.g.*, James E. Bailey *et al.*, *Risk Factors for Violent Death of Women in the Home*, 157 ARCH. INTERN. MED. 777, 777 (1997) (concluding that "[i]nstead of conferring protection, keeping a gun in the home is associated with increased risk of both suicide and homicide of women"); Jacquelyn C. Campbell *et al.*, *Risk Factors for Femicide in Abusive Relationships*, 93 AM. J. OF PUB. HEALTH 1089, 1092 (2003) (finding "no clear evidence of protective effects" against domestic homicide by women with access to firearms); National Academy of Sciences, *Firearms and Violence: A Critical Review* 116-117, 127-150 (2005) (explaining that data on defensive gun uses is problematic); Charles C. Branas *et al.*, *Investigating the Link Between Gun Possession and Gun Assault*, 99 AM. J. OF PUB. HEALTH 2034, 2034 (2009) (concluding, in National Institutes of Health-funded study, that for civilian gun users in urban areas, the probability of successful defensive firearm use is low); David Hemenway & Deborah Azrael, *The Relative Frequency of Offensive and Defensive Gun Uses: Results from a National Survey*, 15 VIOLENCE & VICTIMS 257, 571 (2000) (concluding that firearms are "used far more often to intimidate and threaten than they are used to thwart crimes").

women—"could access handguns . . . was contributing to violent crime," and "in turn, [it] reasonably tailored a solution to the particular problem."  *NRA*, 700 F.3d at 209.  As the Fifth Circuit has recognized, "Congress's finding that minors under 21 are prone to violent crime, especially with guns-in-hand, is entitled to some deference."  *Id*. at 210 n.21.

In sum, in enacting the age qualification, Congress compiled evidence showing that reducing violent crime perpetrated by young persons under twenty-one by preventing them from directly purchasing handguns from licensed firearms dealers constituted an important government interest, and selected means that were reasonably adapted to achieving that objective.  Plaintiffs have presented no reason why Congress should have excluded women from this legislation.  Indeed, such an exclusion would have been inconsistent with the general presumption that under equal protection principles, Congress should legislate neutrally on the basis of sex absent exceedingly persuasive justification.  The Court should therefore enter summary judgment for Defendants on Count II.[13]

## CONCLUSION

As explained above and in Defendants' opening merits brief, because Plaintiffs fail to satisfy the requirements for Article III standing, the Court lacks subject matter jurisdiction.  Plaintiffs' claims are also barred by binding Fifth Circuit precedent, and in any event, have no merit.  The Court should therefore dismiss this case or enter summary judgment for Defendants.

Dated:  July 16, 2021                    Respectfully submitted,


                                         BRIAN M. BOYNTON
                                         Acting Assistant Attorney General

---

[13] Because the Fifth Circuit's binding decision in *NRA* controls Plaintiffs' claims in this case, there is no occasion for the Court to consider the recent 2-1 panel decision by the Fourth Circuit in *Hirschfeld v. ATF*, 2021 WL 2934468 (4th Cir. Jul. 13, 2021), from which the court's mandate has not yet issued.

LESLEY FARBY
Assistant Branch Director


    /s/ *Daniel Riess*
DANIEL RIESS (Texas Bar No. 24037359)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
Tel: (202) 353-3098
Fax: (202) 616-8460
Daniel.Riess@usdoj.gov
*Attorneys for Defendants*