# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CALEB REESE** *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 6:20-cv-01438 |
| | : | |
| **THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES** *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

# PLAINTIFFS' REPLY IN SUPPORT OF THEIR
# CROSS MOTION FOR SUMMARY JUDGMENT

**I.     Plaintiffs Have Standing.**

The Government acknowledges, as it must, that Plaintiffs have standing under *Nat'l Rifle Ass'n of Am., Inc. ("NRA") v. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF")*, 700 F.3d 185, 192 (5th Cir. 2012). Nevertheless, it repeats its argument that Plaintiffs (including Naquin) lack standing because they theoretically could obtain handguns by other means. Defs.' Combined Reply Br. In Supp. of Their Mot. for Summ. J. and Opp'n. Br. to Pls.' Cross-Mot. to Summ. J., Doc. 55 ("Govt. Opp.") at 2. But as *NRA* correctly concluded, not being able to buy from federally licensed firearms dealers ("FFLs") is an injury. 700 F.3d at 192. "[O]ther options are not always readily available to many individuals. Not all young adults have friends or family members who are able or willing to gift them a gun. And secondary markets are not always available to everyone or easy to navigate safely." *Hirschfeld v. ATF*, --- F.4th ----, 2021 WL 2934468, at *7 (4th Cir. July 13, 2021).

**II.    The Court Should Grant Summary Judgment on Naquin's As-Applied Challenge.**

   **A.     *NRA* Does Not Foreclose an As-Applied Challenge to the Handgun Ban.**

"[I]t is well-established that the facial upholding of a law does not prevent future as-applied challenges." *In re Cao*, 619 F.3d 410, 430 (5th Cir. 2010). Where an argument was not briefed to a court and not discussed in an opinion, that opinion does not bind a future court to whom the argument *is* raised. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 39 (1952); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285 (5th Cir. 2006). Although the panel in *NRA* concluded that the Handgun Ban was facially constitutional, that holding merely means that the Handgun Ban is not "unconstitutional in all applications or lack[ing] any plainly legitimate sweep." *United States v. Anderton*, 901 F.3d 278, 284 (5th Cir. 2018) (quotations omitted). It says nothing whatsoever about Naquin's as applied challenge, which it did not consider.

The Government seems to suggest that firearms litigation is different and that a facial

1

challenge in this area should preclude a later-asserted as-applied challenge. It attempts to distinguish *Binderup v. Att'y Gen.*, 836 F.3d 336 (3d Cir. 2016) (en banc), which squarely rejected that proposition, *id.* at 350 (Ambro, J., plurality op.); *id.* at 366–67 (Hardiman, J. concurring), as "misplaced" because "that opinion 'stand[s] entirely alone,'" Govt. Opp. 11 (quoting *id.* at 387 (Fuentes, J., concurring)). But Judge Fuentes did not say *Binderup* "stands entirely alone" in allowing as-applied challenges to firearms laws (specifically, 18 U.S.C. § 922(g)(1)) as the Government implies; he acknowledged in the preceding sentence that at least four other circuit courts had also considered such challenges. *Binderup*, 836 F.3d at 387. Nor does the Fifth Circuit's rejection of an apparently facial challenge to the same law at issue in *Binderup* in *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) (applying plain error review) suggest the Fifth Circuit would not hear a similar challenge in an appropriate case. In fact, in *United States v. McGinnis*, 956 F.3d 747 (5th Cir. 2020) the Fifth Circuit recently held that a similar law (18 U.S.C. § 922(g)(8)) "passes constitutional muster [against a facial challenge] under our two-step *NRA* framework," but noted "that [its] holding today does not foreclose the possibility of a successful as-applied challenge to § 922(g)(8)." *Id.* at 759. There is no reason to deviate from the ordinary rule that an earlier facial challenge does not foreclose an as-applied challenge under the Second Amendment.

Alternatively, the Government tries to recharacterize Naquin's claim as a facial one because she seeks a declaration that the law is unconstitutional "as applied to 18-to-20-year-old women." Govt. Opp. 10 (quoting Compl. 23). The Government notes that the Fifth Circuit has cautioned that "to categorize a challenge as facial or as-applied [courts] look to see whether the claim and the relief that would follow reach beyond the particular circumstances of the plaintiffs." *Catholic Leadership Coal. of Texas v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014) (quoting *Doe*

2

*v. Reed*, 561 U.S. 186, 194 (2010)) (cleaned up); Govt. Opp. 10. But as stated, the relief sought *is* limited to the circumstances of Naquin, who is an 18-to-20-year-old-woman, and is not like the relief sought in *Reed*, where plaintiffs' challenge was only " 'as applied' in the sense that it [did] not seek to strike the [public records act] in all its applications, but only to the extent it covers referendum petitions." 561 U.S. at 194. In other words, because the relief in *Reed* would invalidate *a portion* of the law, as applied to *all people*, it was properly considered a facial challenge. Here, Naquin seeks to invalidate the *entire* Handgun Ban, as applied *only to women 18-to-20-years old*.

That the requested relief extends to individuals who share the characteristics that make the ban unconstitutional as applied to Naquin does not convert her challenge to a facial one. That sort of remedy is commonplace in as-applied challenges. *See Mance v. Sessions*, 896 F.3d 699, 706 (5th Cir. 2018) ("[Plaintiffs] additionally challenge the federal laws, as applied to the Hansons *and similarly situated residents of the District of Columbia*. We consider those contentions to be as-applied challenges.") (emphasis added); *Justice v. Hosemann*, 771 F.3d 285, 294 (5th Cir. 2014) ("[I]n an as-applied challenge, if possible, 'a court will excise the plaintiff and those similarly situated from the statute's constitutional reach by effectively severing the unconstitutional applications of the statute from the unproblematic ones.' ") (quoting Nathaniel Persily and Jennifer Rosenberg, *Defacing Democracy?: The Changing Nature and Rising Importance of As-Applied Challenges in the Supreme Court's Recent Election Law Decisions*, 93 Minn. L. Rev. 1644, 1647 (2009)); *see also Isaacson v. Horne*, 716 F.3d 1213, 1231 (9th Cir. 2013) ("[T]he facial versus as-applied distinction is relevant when a claimed statutory defect applies to a sub-category of the people affected by the law, and the court must determine whether that particular sub-category may challenge the statute as a whole, including its application to people who are not similarly situated."); *North Carolina Right to Life, Inc. v. Leake*, 525 F.3d 274, 293 (4th Cir. 2008) ("We

3

thus declare [the statute] unconstitutional as applied to [plaintiff] and all similarly situated entities.").

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019), which the Government cites, Govt. Opp. 11, confirms that this case is appropriately classed as an as-applied challenge and that it is not foreclosed by *NRA*. "The facial/as-applied distinction affects *the extent to which* the invalidity of a statute need be demonstrated, not the *substantive rule of law* to be used." *Id.* at 1128 (quotations omitted). Naquin concedes, for the purpose of her challenge, that the substantive rule of law laid out in *NRA* should govern her challenge, but her challenge is nevertheless not the same as the one at issue in *NRA* because Naquin only seeks to show that the Ban is invalid as applied to her and those similarly situated (other women). For the same reason, it is simply not true that "the argument raised by the Plaintiffs in this case rests . . . on the same general principles rejected by the court" in *NRA*. Govt. Opp. 11 (quoting *In re Cao*, 619 F.3d 410, 430 (5th Cir. 2010)). That one of the named plaintiffs in *NRA* was a woman, Govt. Opp. 11, is simply irrelevant—what matters is what arguments were raised and considered, and the argument raised by Naquin was not briefed, argued, or considered in *NRA*. Therefore, it is appropriate for this Court to consider it.

**B.     Under *NRA*, the Handgun Ban is Unconstitutional As Applied to Naquin.**

Under *NRA*, a court must analyze Second Amendment challenges in two steps. First, the Court asks whether a law "impinges upon a right protected by the Second Amendment." *NRA*, at 194. As discussed in Plaintiffs' earlier submissions, "the Constitution's text, structure, and history affirmatively prove that 18-year-olds are covered by the Second Amendment." *Hirschfeld*, 2021 WL 2934468, *27. The Handgun Ban therefore prevents "an entire group of adult, law-abiding citizens" with Second Amendment rights "from purchasing handguns from licensed dealers, substantially burdening the group's rights." *Id.* at *7. That means, following *NRA*, the court must apply intermediate scrutiny to Naquin's challenge to the Handgun Ban. *NRA*, 700 F.3d at 197. In

4

other words, the Government must "demonstrate a 'reasonable fit' between the challenged regulation and an 'important' government objective." *Id.* at 195. This it cannot do. As explained in Plaintiffs' motion for summary judgment, women between 18 and 20 are much less likely to commit violent crime than men—only 0.13% of 18-to-20-year-old women were arrested for violent crime in 2019, and just 0.0019% were arrested for murder or nonnegligent homicide (the figures for men are four and ten times greater, respectively). *See* Pls.' Resp. to Defs.' Mot. to Dismiss or for Summ. J. and Mem. in Supp. of Pls.' Cross-Mot. for Summ. J. ("Pls.' Mem."), Doc. 49-2 at 19. And women suffer disproportionately from violent crime, especially domestic violent crime, and have a greater need for weapons to defend themselves against partners who are usually bigger and stronger than them. Pls.' Mem. 20–21. Preventing women from buying handguns works directly *against* the objectives of the Ban, and even if that were not so, there is nothing "reasonable" about the fit between a 0.0019% homicide rate and "a functional ban on 18-to-20-year-olds" acquiring handguns and ammunition. *Hirschfeld*, 2021 WL 2934468, *7.

      **i.    The Government Has Not Demonstrated a Reasonable Fit Between the Applying the Ban to Women and Any Important Government Objective.**

In response, the Government argues that Naquin's argument must be rejected because "the validity of the [statute] depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interest in an individual case." Govt. Opp. 12 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 801 (1989)). But *Ward* was, among other things, a First Amendment case and a facial challenge. At most, it stands for the proposition that a law is not *facially* invalid if it does not always advance every legitimate government interest that motivated its passing. *See* 491 U.S. at 793–94. The Supreme Court merely noted that two of the government interests supporting the law would not be advanced by application against the plaintiffs ("inexperienced [sound] technicians and insufficient sound

5

volume") but others ("limiting sound volume") undeniably would be. *See id.* at 800–01. In an as applied challenge,[1] a plaintiff does not assert the statute is invalid, merely that it is unconstitutional *as applied* to herself and similarly situated others. In such a case, the court must determine whether there is a "reasonable fit" between *any* of the aims of the challenged law and its application to the challenger. *See Binderup*, 836 F.3d at 354–56 (Ambro, J., plurality op.); *see also, e.g.*, *Shaw v. Murphy*, 532 U.S. 223, 232 (2001) ("[T]he question remains whether the prison regulations, as applied to Murphy, are 'reasonably related to legitimate penological interests.' ").

The Government argues the "reasonable fit" can be shown by relying on a years-long investigation of gun crimes that Congress conducted in the 1960s, Govt. Opp. 13, but, "[c]urrent burdens on constitutional rights 'must be justified by current needs,' " *Mance v. Sessions*, 896 F.3d 699, 706 (5th Cir. 2018); *see also NRA*, 700 F.3d at 209 (assessing whether the Ban had "retained its reasonableness" in light of current conditions). And since Congress enacted the Handgun Ban, the regulatory landscape for purchasing firearms has entirely changed. Provided sales are made through an FFL, it is no longer true that "any person can anonymously acquire firearms," S. Rep. No. 90-1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112 at 2114; background checks are required to complete a sale, 18 U.S.C. § 922(t). What is more, even on its own terms, the Congressional record evidence does not prove there is an important government interest in keeping women 18-to-20-years-old from purchasing firearms from dealers. The anecdotal descriptions of youth crime show that the violent crime that motivated Congress in passing the Ban was overwhelmingly committed by males. The Senate Report and the Government cite evidence from Greenville, South Carolina, where 42 males and just 3 females were arrested for violent crimes in

---

[1] The Government also cites *United States v. Edge Broadcasting Co.*, 509 U.S. 418 (1993), which was an as-applied challenge (and another First Amendment case), to support this argument, but Plaintiffs addressed that case at length in earlier briefing and the Government does not respond to those arguments at all. *See* Pls.' Mem. 22–23.

6

1964, and 26 males and 2 females were arrested in the first half of the following year. S. Rep. No. 89-1866, at 59 (1966); *see also, Hirschfeld*, 2021 WL 2934468, *33–35 (summarizing weaknesses of record evidence connecting violence to purchases from licensed dealers, noting "Congress's conclusion depends on [IRS] Commissioner Cohen's testimony, which itself is conclusory and rests on no evidence").[2] That sort of evidence does not "reasonabl[y] fit" with a total prohibition on handgun purchases for 18-to-20-year-old women.

The Government also argues that contemporary data reinforces the need for the Ban as applied to women, because "young adults had the highest homicide offending rate" and "compared with women of all ages, women between eighteen to twenty-four . . . are arrested at the highest rates." Govt. Opp. 15–16. It asserts that these "comparative arrests rates for different ages" are more useful for assessing the Ban than asking how many women 18-to-20-years-old commit violent crime at all. *Id.* at 16. But this is incorrect. Before looking at comparative data, the Government must first demonstrate that a substantial portion of the group in question poses a threat to the interest the Government seeks to promote. If the Government could justify a restriction by reference to comparative rates alone, then the Government could *always* burden someone's constitutional rights if it chose the comparatively worst group. If that were the case, *Craig v. Boren*, 429 U.S. 190 (1976) would have been decided differently because men were, comparatively, more likely to drive drunk than women. *Id.* at 201. Rather, what mattered in *Craig* was that, considering the percentage of men who drove drunk at all, 2% of the population was an "unduly tenuous fit" for restricting men's access to 3.2% beer. *Id.* As the Fourth Circuit explained in *Hirschfeld*, "[t]he

---

[2] At the end of its discussion of the Congressional record, the Government cites *NRA*'s conclusion that the Government had identified "an important governmental objective" and that it "selected means that were reasonably adapted to achieving that objective." 700 F.3d at 209; Govt. Br. 14. But *NRA* applied a *facial* analysis and does not resolve this claim. The Government's refusal to consider Naquin's challenge *as-applied* means this type of error recurs throughout its argument. *See also, e.g.*, Govt. Opp. 17 "[E]vidence suggests that as compared with women of different ages, women between eighteen and twenty 'tend to be relatively irresponsible and can be prone to violent crime.'" (quoting *NRA*, 700 F.3d at 206, which did not distinguish between women and men).

7

question is not about the disparity between groups or the total crime each group commits, but the percentage of the group that uses a gun in an impermissible manner." 2021 WL 2934468, *32.

In arguing in favor of comparative rates, the Government relies on dicta in an out-of-circuit case to the effect that restrictions on felons are valid because "someone with a felony conviction in his record is more likely than a nonfelon to engage in illegal gun use." Govt. Opp. 16 (quoting *United States v. Yancey*, 621 F.3d 681, 684 (7th Cir. 2010)). But regardless of whether *Yancey*'s reasoning is correct, it does not help the Government here.[3] The case nowhere indicates that a ban on felon possession of firearms would be valid if only .13% of felons could be expected to commit a violent crime in the future. *Cf. Kanter v. Barr*, 919 F.3d 437, 449 (7th Cir. 2019) (discussing study of nonviolent offenders finding "that about one in five were rearrested for a violent crime within three years of his or her release"). Under *Craig*, that could not possibly be correct.[4]

In any event, if a comparison is to be had, it would be between 18-to-20-year-old women and 21-and-over individuals *of both sexes*, since the latter is the group unrestricted by the Ban. And 18-to-20-year-old women are less of a threat to public safety than 21-and-over individuals generally. In 2019, for example, when just 0.13% of 18-to-20-year-old women were arrested for a violent offense, the number for 21-to-24-year-olds generally was .34%—nearly three times higher. *See* Off. Of Juvenile Justice & Delinquency Programs, *Arrest rates by offense and age group, 2019,*

---

[3] There is a debate about the validity of restrictions on non-violent offenders that has yet to be resolved by the Supreme Court. *See, e.g.*, *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting).

[4] The other cases the Government cites to support using comparative arrest rates, *Horsley v. Trame*, 808 F.3d 1126 (7th Cir. 2015) and *United States v. Luedtke*, 589 F. Supp. 2d 1018 (E.D. Wis. 2008) are likewise neither binding nor helpful to its case. *Horsley* involved a challenge to restrictions on 18-to-20-year-olds generally, and among other things it relied on the fact that "an FBI analysis of crime in 2014 reflects that 18-to-20-year-olds were responsible for more than 15.8% of all charges issued for murder and non-negligent manslaughter." *Id*. at 1133. That same FBI analysis shows that 18-to-20-year-old women were responsible for only about 1.2% of all charges issued for murder and nonnegligent manslaughter. *See* U.S. Dep't of Justice & Fed. Bureau of Investigation, *Crime in the United States 2014*, Tables 38 and 40, *available at* https://bit.ly/3g655VB. Nothing in *Horsley* indicates that such a loose correlation would have passed muster. And *Luedtke*, by stating that "there is no requirement under the Second Amendment that only those persons found imminently likely to engage in gun violence may be dispossessed of their firearms, 589 F. Supp. 2d at 1023, in no way suggests that members of a group could have their Second Amendment rights restricted on the basis of 0.13% of them being arrested for a violent offense.

*Gender: All*, U.S. DEP'T OF JUST., https://bit.ly/3lNHOuU. It makes no sense to apply the Handgun Ban to 18-to-20-year-old women while leaving 21-to-24-year-olds unrestricted.

  **ii.  Women Particularly Need Access to Firearms for Self-Defense.**

Even if there were evidence that women 18-to-20-years-old posed a substantial risk of violent crime if allowed to buy handguns like other adults, the Ban would still not be a "reasonable fit" for the identified government objectives because it actively works against protecting women from domestic violent crime. *See Federal Firearms Act: Hearings on S.1, Amendment 90 to S. 1, S. 1853, and S. 1854 Before the Subcomm. to Investigate Juvenile Delinquency of the Sen. Comm. On the Judiciary*, 90th Cong., 1st Sess. 44, 133 (Comm. Print 1967) (noting concern with "angry spouses" and "habitual drunkards" accessing firearms). The Government argues that women in such a situation could be *given* guns, Govt. Opp. 17, but not all women have family or friends who can afford to give them guns, guns from the secondary market lack guarantees of reliability and legality, and the Ban applies to ammunition as well, *see Hirschfeld*, 2021 WL 2934468, *30 n.63. Alternatively, the Government suggests Naquin is wrong to "assume[] that increasing the rate of handgun possession by women between eighteen and twenty will necessarily decrease the rate at which they are victimized by violent crime" and cites studies suggesting that, as an empirical matter, the question is debatable. Govt. Opp. 18. But self-defense "was the *central component* of the right" enshrined in the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008). And where women are at a demonstrably greater risk of becoming victims of serious crime the Government cannot paternalistically deprive them of their Second Amendment rights because it believes they are better off without them. *Heller* forecloses that possibility.

  **iii.  Declaring the Ban Unlawful As Applied Comports With Equal Protection.**

The Government argues that, "Congress should ordinarily legislate in a manner that is sex-neutral and should only deviate from that presumption when appropriately justified," Govt. Opp.

14 (citing *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 135 (1994))*,* but deviation is appropriately justified here. Indeed, this follows necessarily from *NRA*, because that case held that a *less pronounced* distinction in potential for violence between 18-and-20-year-olds and older adults satisfied intermediate scrutiny, the same level of scrutiny that applied to sex distinctions. *See* Pls.' Mem. 24 n.6; *see also Hirschfeld*, 2021 WL 2934468, *32 & n.68.

The cases the Government cites are not to the contrary.[5] As discussed, *Craig* affirmatively demonstrates the problems with the Government's statistical reasoning as well as the unduly tenuous fit between the problem the Government sought to solve with the Ban and the means used to accomplish it. *Frontiero v. Richardson*, 411 U.S. 677, 688 (1973) overturned a law that treated women worse than men for "no purpose other than mere 'administrative convenience.' " *Weinberger v. Weisenfeld*, 420 U.S. 636, 648 (1975) similarly overturned a provision of the Social Security laws that "deprive[d] women of protection for their families which men receive[d]" that was "in no way premised upon any special disadvantages of women." *Stanton v. Stanton*, 421 U.S. 7, 14 (1975) struck down as irrational a Utah law that set different termination ages for child support payments for males (21) and females (18), based on "old notions" of the greater need for men to be supported by their parents through education and training. This case is entirely different. Strong, contemporary statistical evidence justifies excepting women from the Handgun Ban. Indeed, it would be an odd application of Equal Protection to hold that women must be restricted in the exercise of their rights because men have abused that right.

## CONCLUSION

The Court should grant Plaintiffs' cross-motion for summary judgment.

---

[5] Nor did Plaintiffs fail to address this argument and these cases, which appeared only in a footnote in the memorandum supporting the Government's motion for summary judgment, and as such were not properly raised by that brief. *See* Pls.' Mem. 24 n.6.

10

Dated: August 13, 2021

/s/ George J. Armbruster III
George J. Armbruster III
Armbruster & Associates, APLC
332 E. Farrel Road, Suite D
Lafayette, LA 70508
Phone: 337-889-5511
Fax: 337-889-5512
Email: george@arm-assoc.com

Local Counsel

Respectfully submitted,

/s/ David H. Thompson
David H. Thompson
Peter A. Patterson
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
Telephone: (202) 220-9600
Email: dthompson@cooperkirk.com

Raymond M. DiGuiseppe - T.A.
THE DIGUISEPPE LAW FIRM, P.C.
4320 Southport-Supply Road, Suite 300
Southport, NC 28461
Phone:910-713-8804
Fax: 910-672-7705
Email: law.rmd@gmail.com

Adam Kraut
FIREARMS POLICY COALITION
1215 K Street, 17th Floor
Sacramento, CA 95814
Phone: (916) 476-2342
Email: akraut@fpclaw.org

Joseph Greenlee
FIREARMS POLICY COALITION
1215 K Street, 17th Floor
Sacramento, CA 95814
Phone: (916) 438-9237
Email: jgr@fpclaw.org

John W. Dillon
DILLON LAW GROUP APC
2647 Gateway Road
Carlsbad, CA 92009
Phone: (760) 642-7150
Fax: (760) 642-7151
Email: jdillon@dillonlawgp.com

Admitted *Pro Hac Vice*
*Attorneys for Plaintiffs*