**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **CALEB REESE *et al.*,** | ) | |
| | ) | **Civil Action No. 6:20-cv-01438** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**BRIEF IN SUPPORT OF DEFENDANTS' PROPOSED JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 4

I. No Universal Relief Should Be Entered. ..... 4

II. The Court's Judgment Should Be Limited to the Three Individual Plaintiffs, and to Any Identified and Verified Member of the Organizational Plaintiffs Who Was a Member When Suit Was Filed. ..... 6

A. Limiting the Proposed Judgment to Individuals Identified and Verified as Members of the Organizational Plaintiffs Is Necessary to Comply With Rule 65(d)'s Specificity Requirements. ..... 6

B. Limiting the Proposed Judgment to Members of the Organizational Plaintiffs When Suit Was Filed Is Necessary to Comply With Article III Standing Requirements and Principles of Equity. ..... 10

CONCLUSION ..... 13

## INTRODUCTION

The Court has directed the parties to submit proposed judgments in this case challenging age limitations in federal law on the sale of handguns and handgun ammunition. Defendants have submitted a proposed judgment that is reasonable in scope, and that complies with limits on the Court's subject matter jurisdiction, the Federal Rules of Civil Procedure, Article III standing requirements, and equitable principles.

As an initial matter, the entry of universal permanent relief is contrary to the Supreme Court recent decision in *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025), and would also be inconsistent with decisions from other Courts of Appeals that have addressed the same issues presented here. Defendants' proposed judgment appropriately limits any award of permanent relief to the three individual plaintiffs, and to (A) members of the organizational plaintiffs identified and verified to Defendants during this litigation (B) who were members when suit was filed. Limiting the scope of relief to identified and verified members of the organizational plaintiffs is necessary to comply with Federal Rule of Civil Procedure 65's specificity requirements. Because Defendants lack the means of identifying additional members of the organizational plaintiffs to which final relief might apply—and Plaintiffs have refused to identify such members—Defendants would be unable to comply with any order directing them not to apply the challenged laws to these (unknown) persons. Such an order would thus be impermissibly vague. Furthermore, limiting the scope of permanent relief to members of the organizational plaintiffs who were members when suit was filed is necessary because only such persons have standing to sue, and because equity requires this limitation to avoid incentivizing free riders. Defendants thus respectfully request that the Court enter their proposed judgment.

**BACKGROUND**

Three individual plaintiffs and three organizational plaintiffs initiated this suit on November 6, 2020, and amended their complaint on May 5, 2021. Compl. for Declaratory J. and Injunctive Relief, ECF No. 1 ("Compl."); Compl. for Declaratory J. and Injunctive Relief and Nominal Damages, ECF No. 29 ("Am. Compl."). The three individual plaintiffs are Caleb Reese, Joseph Granich, and Emily Naquin ("the individual plaintiffs"), and the three organizational plaintiffs are Firearms Policy Coalition, Second Amendment Foundation, and Louisiana Shooting Association (collectively, "the organizational plaintiffs"). Am. Compl. ¶¶ 6-11.

In this suit, the individual and organizational plaintiffs mounted a constitutional challenge to two statutory provisions imposing conditions on the commercial sale of firearms, to the extent they pertain to the purchase of handguns and handgun ammunition. Both provisions are part of the Gun Control Act of 1968, as amended, 18 U.S.C. §§ 921-931 ("the Act"). The first statutory provision, codified at 18 U.S.C. § 922(b)(1), makes it

> unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver . . . any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age[.]

18 U.S.C. § 922(b)(1). The second statutory provision, codified at 18 U.S.C. § 922(c), provides that in "any case not otherwise prohibited by [the Act], a licensed importer, licensed manufacturer, or licensed dealer may sell a firearm to a person who does not appear in person at the licensee's business premises (other than another licensed importer, manufacturer, or dealer) only if" the purchaser submits a sworn statement attesting that he or she is not prohibited by 18 U.S.C., chapter 44, or applicable state or local law, from receiving firearms. *Id.* § 922(c). If the firearm to be

purchased is a handgun, the purchaser must attest that he or she is twenty-one years of age or older. *Id.* § 922(c)(1).[1]

The plaintiffs alleged the following facts in their complaint. At the time the complaint was filed in November 2020, the individual plaintiffs were residents of Louisiana between the ages of eighteen and twenty. Am. Compl. ¶¶ 6-8. The individual plaintiffs alleged that they are members of the organizational plaintiffs, *id.*, and that they wished to purchase particular models of handguns that were allegedly available from local retailers. *Id.* ¶¶ 20-23, 25-28, 30-33. The organizational plaintiffs alleged that they brought this action "on behalf" of individual members between ages eighteen and twenty who would allegedly "purchase handguns and handgun ammunition from lawful retailers," and on behalf of licensed firearm dealers who allegedly "would sell handguns and handgun ammunition" to persons between ages eighteen and twenty, except for the challenged laws. *Id.* ¶¶ 9-11, 19-33. The complaint challenged these laws as inconsistent with the Second Amendment on its face and as applied to both sets of plaintiffs. *Id.* ¶¶ 71-82.[2]

Finding that the challenged laws were constitutional, this Court granted Defendants' motion to dismiss for failure to state a claim. *Reese I*, 647 F. Supp. 3d at 520-25. The Fifth Circuit reversed and remanded to this Court "for further proceedings consistent with [its] opinion." *Reese II*, 127 F.4th at 600. On remand, this Court directed the parties to "submit a proposed judgment

---

[1] In addition to challenging these two statutory provisions, the plaintiffs in this case also challenged 27 C.F.R. § 478.99(b), which is phrased identically to 18 U.S.C. § 922(b)(1).

[2] Plaintiffs also challenged these laws as applied to women between the ages of 18 and 20. Am. Compl. ¶¶ 83-90. The Court dismissed this claim, and the Fifth Circuit did not deem it necessary to resolve this claim. *See Reese v. Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF")*, 647 F. Supp. 3d 508, 525 (W.D. La. 2022) ("*Reese I*"); *Reese v. ATF*, 127 F.4th 583, 586 n.1 (5th Cir. 2025) ("*Reese II*").

for the Court's consideration, if they are able to reach agreement, or [to] file separate proposed judgments, if they are unable to reach agreement." Order, ECF No. 77.

## ARGUMENT

### I. No Universal Relief Should Be Entered.

*Reese II* is now binding precedent in the Fifth Circuit. Accordingly, consistent with the executive branch's ordinary practice of intra-circuit acquiescence, Defendants do not plan to enforce the challenged laws within the geographical boundary of the Fifth Circuit (*i.e.*, the states of Texas, Louisiana, and Mississippi) to the extent that they prohibit the sale or delivery by licensed importers, licensed manufacturers, licensed dealers, or licensed collectors of any handgun or handgun ammunition to persons between 18 and 20 years of age. Due to Defendants' acquiescence, it is unnecessary for the Court to enter any form of injunctive relief requiring Defendants to adhere to the *Reese II* decision within the Fifth Circuit.

Furthermore, to the extent that Plaintiffs might request this Court to enter declaratory or injunctive relief universal in scope, such a request would be inappropriate. As recently confirmed by the Supreme Court in *Trump v. CASA, Inc*., 145 S. Ct. 2540 (2025), "the equitable relief available in the federal courts is that 'traditionally accorded by courts of equity' at the time of our founding." *Id*. at 2560 (citation omitted). Because "[n]othing like a universal injunction was available at the founding, or . . . for more than a century thereafter," under the Judiciary Act of 1789, "federal courts lack authority to issue" universal injunctions. *Id.*

This same principle forecloses the entry of a universal declaratory judgment. "Although the Declaratory Judgment Act 'enlarged the range of remedies available in the federal courts,' it 'did not extend their jurisdiction.'" *Enable Miss. River Transmission, LLC v. Nadel & Gussman, LLC*, 844 F.3d 495, 497 n.2 (5th Cir. 2016) (quoting *Skelly Oil Co. v. Phillips Petroleum Co*., 339

U.S. 667, 671 (1950)); *see also CASA*, 145 S. Ct. at 2552 (noting that the Supreme Court has stated that "[n]either *declaratory* nor injunctive relief . . . can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs") (citation omitted) (emphasis added).

Entry of universal relief would be especially inappropriate here, because such relief would effectively overrule the decisions of another Court of Appeals. The Fourth Circuit in *McCoy v. ATF*, 140 F.4th 568 (4th Cir. 2025), has held that the same laws challenged in this case are consistent with the Second Amendment as applied to persons between eighteen and twenty years old. *See id*. at 572 ("18 U.S.C. § 922(b)(1) prohibits the commercial sale of handguns to individuals under the age of 21. Appellees are four 18-to-20-year-olds who want to buy handguns. The question in this case is whether § 922(b)(1) violates appellees' Second Amendment rights. We hold that it does not."). Nor could universal relief be easily squared with the reasoning of the Eleventh Circuit's decision in *National Rifle Association ("NRA") v. Bondi*, 133 F.4th 1108 (11th Cir. 2025) (en banc), which upheld a state law prohibiting the purchase of firearms by persons under twenty-one, as applied to persons between eighteen and twenty-one years of age, against Second and Fourteenth Amendment challenges. *Id*. at 1111, 1130.[3] In these circumstances, there is no basis for this Court to issue a veto power over the Fourth Circuit's decision (and implicitly, the Eleventh Circuit's decision).

The Court should therefore decline to enter any judgment imposing universal injunctive or declaratory relief.

[3] Both the plaintiffs in *McCoy* and in *NRA* have filed petitions for writs of certiorari challenging the Fourth and Eleventh Circuits' decisions. *See McCoy v. ATF*, No. 25-24 (U.S. July 8, 2025); *NRA v. Glass*, No. 24-1185 (U.S. May 20, 2025).

## II. The Court's Judgment Should Be Limited to the Three Individual Plaintiffs, and to Any Identified and Verified Member of the Organizational Plaintiffs Who Was a Member When Suit Was Filed.

Defendants propose that the Court issue a declaratory judgment that applies to the individual plaintiffs, and to individuals who (A) were members of the organizational plaintiffs when suit was filed and (B) have been identified and verified as members of the organizational plaintiffs during this case. Entry of a judgment with these limitations is consistent with the specificity requirements of Federal Rule of Civil Procedure 65(d), with Article III standing requirements, and with established principles of equity.

### A. Limiting the Proposed Judgment to Individuals Identified and Verified as Members of the Organizational Plaintiffs Is Necessary to Comply With Rule 65(d)'s Specificity Requirements.

In accordance with the specificity requirements of Rule 65(d), Defendants' proposed judgment limits its scope to members of the organizational plaintiffs who have been identified and verified to Defendants during this case. Defendants cannot comply with a judgment if they do not know to whom the judgment applies. Here, Defendants do not know the identity of any members of the organizational plaintiffs except for the three individual plaintiffs, and they lack the means to identify other members. Any permanent relief that does not include this limitation would be too vague to be understood, and thus would be subject to vacatur for failure to comply with Rule 65.

Federal Rule of Civil Procedure 65(d) requires that "[e]very order granting an injunction" must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Simply put, "[a]n injunction must simply be framed so that those enjoined will know what conduct the court has prohibited." *Scott v. Schedler*, 826 F.3d 207, 213 (5th Cir. 2016) (quoting *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981)). This drafting standard means that "[a]n ordinary person

reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Carter v. Local 556, Transp. Workers Union of Am.*, 138 F.4th 164, 204 (5th Cir. 2025) (quoting *Louisiana v. Biden*, 45 F.4th 841, 846 (5th Cir. 2022)); *see also Moore v. Tangipahoa Par. Sch. Bd.*, 864 F.3d 401, 407 (5th Cir. 2017) (stating that "individuals and entities subject to injunctions must have fair notice of the terms of the injunction").

"[A]n injunction is overly vague if it fails to satisfy the specificity requirements set out in Rule 65(d)(1)." *Carter*, 138 F.4th at 204 (quoting *Scott*, 826 F.3d at 211). At bottom, because "vagueness is a question of notice, *i.e.*, procedural due process," Rule 65(d) "embodies the elementary due process requirement of notice." *Scott*, 826 F.3d at 211, 212 (quoting *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 & n.19 (5th Cir. 1975)). "An injunction that fails to comply with [Rule 65's] specificity requirements must be vacated." *Carter*, 138 F.4th at 204.

Rule 65's specificity requirement "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Louisiana*, 45 F.4th at 846 (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). "Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Carter*, 138 F.4th at 204 (quoting *Schmidt*, 414 U.S. at 476). Courts thus have found injunctions too vague when they failed to provide sufficient notice of the individuals or entities against whom conduct was enjoined. *See, e.g.*, *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1411 (11th Cir. 1998) (injunction prohibiting entity from contacting "any donor whose name is contained on Plaintiff's [trade secret donor] lists" impermissibly vague because enjoined party had "no way to determine whether a given member

of the public might happen to appear on" a list not in its possession (citation omitted)); *NLRB v. Teamsters, Chauffeurs, Helpers & Taxicab Drivers*, 419 F.2d 1282, 1283 (6th Cir. 1970) (injunction directing employers to cease from restraining or coercing the employees of a specified company "or the employees of any other employer within its jurisdictional territory" was too vague where, *inter alia*, the injunction failed to define the specified jurisdiction "and thus it provides no means of defining the people for whom protection is sought" (citation omitted)); *E.W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108, 1116 (8th Cir. 1969) (injunction prohibiting defendants from contacting current or proposed customers of plaintiff company was "excessively vague" where, *inter alia*, neither the court's fact findings nor the injunction itself "determin[ed] the identity of the customers or proposed customers" of the plaintiff so that it was "unclear whom the defendants may or may not contact").

Obviously, to comply with an injunction, the enjoined party must know to whom the injunction applies. But here, Defendants do not know the identity of any members of the organizational plaintiffs other than the three individual plaintiffs who have been identified in this litigation, and Defendants do not possess the means by which to verify the identities of other members. Such information is wholly within the possession and control of the organizational plaintiffs themselves. And even if an individual were to represent to Defendants that he or she is a member of one of the organizational plaintiffs, Defendants do not have the ability to verify the accuracy of that representation.

Accordingly, Defendants have repeatedly informed Plaintiffs that they cannot agree to permanent relief that includes individuals whose identities Defendants do not know and whose organizational membership Defendants cannot verify. But Plaintiffs have failed to disclose the identities of their members and refuse to verify the organizational membership of any person

except for the three individual plaintiffs. To be sure, the organizational members may have a First Amendment right to decline to disclose the identity of their members to Defendants. *See, e.g.*, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 466 (1958). But the organizational plaintiffs cannot have it both ways. The organizational plaintiffs cannot simultaneously decline to identify any of their members and at the same time insist that the Court award permanent relief to unidentified persons whose membership has not been verified.

Therefore, any injunction that would include within its scope unidentified and unverified members of the organizational plaintiffs would place Defendants at risk of contempt, if they inadvertently apply the challenged laws to a person who happens to be a member of one of the organizational plaintiffs. The fatal problem with such an injunction is that on the record before this Court, it is unknown and unknowable which persons are members of the organizational plaintiffs—information necessary for Defendants to know how to avoid contempt of court. *See Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) (stating that the "contempt power is a potent weapon" and that "Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid"). Plaintiffs have provided no means of identifying or verifying any such persons (other than the three individual plaintiffs). And as to one subset of the members of the organizational plaintiffs to which they seek relief—namely, persons between eighteen and twenty who wish to purchase handguns from federal firearms licensees—this problem is only exacerbated by the fact that individuals are constantly aging into and out of this subset of persons. In other words, the group of individuals who are members of the organizational plaintiffs between eighteen and twenty years of age is not a static list but a continually moving target.

The practical result of any injunction that would apply to a host of individuals unknown to Defendants or to the Court would make compliance with such injunction a practical impossibility. To avoid contempt under such an injunction, Defendants might be necessitated to prohibit the application of the challenged laws nationwide. But such a result would in effect grant Plaintiffs all the benefits of being granted a universal injunction, which (as previously explained) would both exceed this Court's jurisdiction and be contrary to the decisions of other Courts of Appeals. *See supra* at I. The Court should not award relief that would result in Plaintiffs obtaining a "backdoor to [a] universal injunction[]." *Washington v. Trump*, 145 F.4th 1013, 1040 (9th Cir. 2025) (Bumatay, J., concurring and dissenting in part). [4]

In sum, Defendants' proposed judgment appropriately limits its scope to members of the organizational plaintiffs who have been identified and verified to Defendants during this litigation. Any injunction that does not include this limitation would be impermissibly vague, in violation of Rule 65(d)'s specificity requirements.

### B. Limiting the Proposed Judgment to Members of the Organizational Plaintiffs When Suit Was Filed Is Necessary to Comply With Article III Standing Requirements and Principles of Equity.

Both Article III and equitable principles require that to receive the benefit of the proposed judgment, an individual must have been an identified member of one of the organizational plaintiffs at the time this suit was filed. Article III confines courts to "adjudicating rights in

[4] Plaintiffs might object that if the scope of the Court's final judgment does not include unidentified and unverified members of their organizations, they will not receive complete relief. But as the Supreme Court has made clear, "to say that a court *can* award complete relief is not to say that it *should* do so. Complete relief is not a guarantee—it is the maximum a court can provide." *CASA*, 145 S. Ct. at 2558. As explained herein, "the necessities of th[is] particular case" do not compel the Court to award relief to unidentified, unverified members of the organizational plaintiffs. *Id.* (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)); *see also Washington*, 145 F.4th at 1041 (Bumatay, J., concurring and dissenting in part) ("Equity sometimes demands that courts grant *less* than complete relief.").

particular cases between the litigants brought before the Court." *Broadrick v. Oklahoma*, 413 U.S. 601, 611 (1973). Courts may not grant relief to members who were not identified in the complaint and who did not agree to be bound by the judgment. *See FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 399 (2024) (Thomas, J., concurring). Rather, because "standing is not dispensed in gross," any permanent relief must be tailored only to those specific plaintiffs who have established standing "for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted).

This suit was filed on November 6, 2020. *See* Compl. Because "standing is to be determined as of the commencement of suit," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5 (1992), only members of the organizational plaintiffs who were members as of November 6, 2020 had standing to assert valid claims for relief.

This conclusion is not altered by the Court's determination that the organizational plaintiffs have associational standing. *See Reese I*, 647 F. Supp. 3d at 512-14. That determination was based on the established principle that "[a]n association has standing to bring suit on behalf of its members" only if, *inter alia*, "its individual members would have standing to sue in their own right." *Id*. at 513. Because standing is determined as of the commencement of suit, only those individuals who were members of the organizational plaintiffs when suit was commenced "would have standing to sue in their own right." *Id*. Any individuals who were not members of these organizations when suit was filed had no claim that these organizations could possibly assert on their behalf. *See Vote.Org v. Callanen*, 39 F.4th 297, 303-05 (5th Cir. 2022) (organization was

unlikely to show that it satisfied the requirements of third-party standing). Rather, the organizational plaintiffs could only bring suit on behalf of their members.[5]

Likewise, equity has long limited mechanisms whereby potentially affected individuals may "await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974). To do otherwise would be to "create[] the possibility of asymmetrical preclusion," enabling the members of the organizational plaintiffs to enjoy the benefits of a favorable judgment while escaping the burdens of an adverse one. *Alliance*, 602 U.S. at 402 (Thomas, J., concurring); *see also McCoy*, 140 F.4th at 573 n.1 (plaintiffs could not "receive the benefit of class-wide relief when they strategically withheld their class certification motion to avoid being bound by an unfavorable ruling"). In fact, given that the organizational plaintiffs have not identified any members except three, it is unclear whether one or more of its members have been plaintiffs in other suits. In *McCoy*, for example, the district court certified a nationwide class, but the Fourth Circuit reversed when it upheld the challenged laws against the same claims asserted here. *See supra* at I.

The availability of injunctions on behalf of unidentified and unverified members of organizational plaintiffs challenging federal law would be manifestly inequitable. If an organization were to fail in its challenge to federal law, because its members would remain unidentified, nothing would prevent them from filing individual suits to challenge the law (including in other jurisdictions). The federal government would be unable to invoke collateral estoppel and res judicata because it would have no way to know that these individuals were

[5] Indeed, the organizational plaintiffs only purport to be bringing suit on behalf of their members. *See* Am. Compl. ¶¶ 9-11.

members of an organization that had received an adverse judgment. On the other hand, if the organization were to prevail in its suit, then its unidentified and unverified members, including latecomers who join the organization as free riders after the decision, would reap the full benefits of that favorable judgment. Equity does not countenance such a "heads I win, tails you lose" result. *See CASA*, 145 S. Ct. at 2558 ("[T]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation omitted)); *id.* at 2559 (identifying one of the criticisms of universal injunctions as "operat[ing] asymmetrically: A plaintiff must win just one suit to secure sweeping relief. But to fend off such an injunction, the Government must win everywhere").

Therefore, in accordance with Article III and with principles of equity, the scope of Defendants' proposed judgment is appropriately limited to persons who were members of the organizational plaintiffs at the time suit was filed and were specifically identified as such during this litigation.

**CONCLUSION**

Defendants respectfully request that the Court enter their proposed judgment.

Dated: September 2, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANDREW WARDEN
Assistant Branch Director

/s/ *Daniel Riess*
DANIEL RIESS (Texas Bar No. 24037359)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005

Tel: (202) 353-3098
Daniel.Riess@usdoj.gov

*Attorneys for Defendants*