IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CALEB REESE** *et al.*, | ) |
| | ) |
|     **Plaintiffs,** | ) Civil Action No. 6:20-cv-01438 |
| | ) |
| v. | ) |
| | ) |
| **BUREAU OF ALCOHOL, TOBACCO,** | ) |
| **FIREARMS AND EXPLOSIVES** *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

**BRIEF IN SUPPORT OF PLAINTIFFS' PROPOSED JUDGMENT AND IN
OPPOSITION TO DEFENDANTS' PROPOSED JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

    I.    Declaratory and Injunctive Relief Should Extend To All 18-to-20-Year-Old Members of the Plaintiff Organizations. ................................................................................................ 2

    II.   The Government's Arguments for Narrower Relief Should Be Rejected ........................... 5

        A.   The Government's Proposal Is Contrary to Precedent ............................................. 6

        B.   The Government's Reasons for Narrowing Relief Are Unfounded ......................... 8

        C.   Plaintiffs Are Not Seeking Universal Relief. ........................................................... 13

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                            **Page(s)**

*A.B. v. Haw. State Dep't of Educ.*,
   30 F.4th 828 (9th Cir. 2022) .................................................................................... 6, 7

*Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*,
   469 F.3d 129 (D.C. Cir. 2006) ................................................................................ 7, 12

*American Red Cross v. Palm Beach Blood Bank, Inc.*,
   143 F.3d 1407 (11th Cir. 1998) ................................................................................... 10

*Awad v. Ziriax*,
   670 F.3d 1111 (10th Cir. 2012) ..................................................................................... 5

*BST Holdings, LLC v. OSHA*,
   17 F.4th 604 (5th Cir. 2021) .......................................................................................... 4

*Dobbs v. Jackson Women's Health Org.*,
   597 U.S. 215 (2022) ...................................................................................................... 5

*eBay, Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006) ...................................................................................................... 4

*FDA v. Alliance for Hippocratic Medicine*,
   602 U.S. 367 (2024) .................................................................................................... 13

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) .................................................................................................. 3, 6

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*,
   477 U.S. 274 (1986) ............................................................................................ 3, 6, 13

*Jackson v. Noem*,
   132 F.4th 790 (5th Cir. 2025) ........................................................................................ 8

*Jackson Women's Health Org. v. Currier*,
   760 F.3d 448 (5th Cir. 2014) ......................................................................................... 5

*Lara v. Comm'r Pa. State Police*,
   125 F.4th 428 (3d Cir. 2025) ....................................................................................... 12

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
   597 U.S. 1 (2022) ....................................................................................................... 3, 4

*Nken v. Holder*,
   556 U.S. 418 (2009) ...................................................................................................... 4

*NRA v. ATF*,
   700 F.3d 185 (5th Cir. 2012) ..................................................................................... 3, 4

*Reese v. ATF*,
   127 F.4th 583 (5th Cir. 2025) ........................................................................................ 2

*Steffel v. Thompson*,
   415 U.S. 452 (1974) .................................................................................................... 14

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023)......................................................................................................3
*United States v. Mendoza*,
    464 U.S. 154 (1984)...............................................................................................13, 14
*Wages & White Lion Invs., LLC v. FDA*,
    16 F.4th 1130 (5th Cir. 2021)..................................................................................3, 4
*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................................................3, 9
*Worth v. Jacobson*,
    108 F.4th 677 (8th Cir. 2024)......................................................................................12

**Statues**

Fed. R. Civ. P. 65(d).............................................................................................................8, 9

**Other Authorities**

ATF Form 4473, *available at* https://perma.cc/L24D-GF2C.............................................11
Samuel Bray, *Multiple Chancellors: Reforming the National Injunction*,
    131 Harv. L. Rev. 417 (2017).............................................................................10, 11
Order, *Reese v. ATF*, No. 23-20033 (5th Cir. Jan. 30, 2024), Doc. 92-2 ...........................2
Joseph Story, Commentaries on Equity Pleadings (3d ed. 1844) ............................................3

## INTRODUCTION

The laws challenged in this case prevent 18-to-20-year-old adult Americans from acquiring handguns or handgun ammunition in the ordinary commercial market. The Fifth Circuit has held that those laws and their supporting regulations are unconstitutional under the Second Amendment. And now the Government has taken the position that even so, Plaintiffs should be entitled only to illusory relief and the Government should be free to continue to enforce these unconstitutional restrictions against Plaintiffs' affected members as though they never brought and won this suit.

Accepting the Government's position here is impossible under governing law. The Government clearly disagrees with fundamental aspects of the doctrine of associational standing, but the Supreme Court has repeatedly blessed the principles that (1) organizations can sue on behalf of their members and that (2) when they win, injunctive and declaratory relief flows through them to their members. Plaintiffs here are in exactly that situation. They have won their case on behalf of their members. Following Supreme Court precedent, this Court should now enter judgment that grants complete relief to the Plaintiffs—which under binding precedent means extending that relief to all of Plaintiffs' affected members, both now and on an ongoing basis.

## BACKGROUND

Plaintiffs Firearms Policy Coalition, Second Amendment Foundation, and Louisiana Shooting Association filed this lawsuit challenging the federal ban on selling handguns and handgun ammunition to 18-to-20-year-olds ("the Ban") on November 6, 2020. *See* Compl., Doc. 1. They were joined in this suit by three individual plaintiffs, Caleb Reese, Joseph Granich, and Emily Naquin who were all, at the time, 18-to-20-year-olds. *See* Am. Compl., Doc. 29 (May 5, 2021). However, inevitably, over the course of the five years that this case has been litigated, each of those individuals turned 21, rendering their individual claims moot. The case did not become

moot, however, because Plaintiffs supplemented the record on appeal with evidence of an additional member with standing, Christian Michael Broussard, who, like Reese at the beginning of the case, is an 18-to-20-year-old who wishes to purchase a handgun from a license dealer. *See* Order, *Reese v. ATF*, No. 23-20033 (5th Cir. Jan. 30, 2024), Doc. 92-2.

With a live case before it, the Fifth Circuit held that the challenged laws, "18 U.S.C. §§ 922(b)(1), (c)(1) and their attendant regulations are unconstitutional" under the Second Amendment, which treats "eighteen-to-twenty-year-old individuals [as] among 'the people' whose right to keep and bear arms is protected." *Reese v. ATF*, 127 F.4th 583, 600 (5th Cir. 2025). Accordingly, the Fifth Circuit remanded this suit to this Court for "proceedings consistent with this opinion." *Id.*

Following an attempt to negotiate an appropriate judgment with the Government, the parties have now submitted alternative proposals for this Court's consideration. Whereas Plaintiffs' proposal would provide complete relief to the Organizational Plaintiffs by entering a declaration that the challenged laws are unconstitutional and enjoining their enforcement to prevent the acquisition of handguns from licensed dealers by any 18-to-20-year-old members of the Organizational Plaintiffs, *see* Pls.' Proposed Order, Doc. 78-1 (Sept. 2, 2025), the Government's proposal would provide only declaratory relief, and that limited to the named individual plaintiffs not one of whom is still under the age of 21, *see* Gov't Proposed Order, Doc.79-1 (Sept. 2, 2025).

**ARGUMENT**

**I.   Declaratory and Injunctive Relief Should Extend To All 18-to-20-Year-Old Members of the Plaintiff Organizations.**

The Government's proposed order is inadequate to meet the needs of this case. The Supreme Court has repeatedly recognized, including as recently as two years ago, that organizations like Firearms Policy Coalition, Second Amendment Foundation, and Louisiana

2

Shooting Association, have standing to sue on behalf of their injured members. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 198–201 (2023); *see also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). That standing is explicitly predicated on the fact that the organization can *get relief* for its members who are not personally before the Court: "If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Hunt*, 432 U.S. at 343 (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)). "The doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 290 (1986). Indeed, the Supreme Court has explicitly condoned relief for organizational members, and it rejected the notion that a union suing on behalf of its thousands of members had to bring a class action to secure relief for those members. *Id.* at 288. And the practice of affording relief to associations of individuals who share common interests has a long history in this country and before, extending back to the English common law. *See* JOSEPH STORY, COMMENTARIES ON EQUITY PLEADINGS 135, § 107 (3d ed. 1844) (explaining that representational standing suits could be maintained at equity "where the parties form a voluntary association for public or private purposes, and those, who sue or defend, may fairly be presumed to represent the rights and interests of the whole").

That means that the Organizational Plaintiffs in this case must have the ability to secure relief for their members in this suit. They have consistently asserted the rights of their members, and the Fifth Circuit has previously recognized that *this specific injury* is one that is amenable to litigation by an organization for its members' benefit. *See NRA v. ATF*, 700 F.3d 185, 191 (5th Cir.

2012), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) (establishing "NRA's associational standing on behalf of its 18-to-20-year-old[] members"); *see also* Mem. Ruling at 5–6, Doc. 66 (Dec. 21, 2022) (relying on *NRA* and the affidavits of the Organizational Plaintiffs to find standing in this suit). This Court is therefore bound by Supreme Court and Fifth Circuit precedent to award them relief commensurate with their standing that benefits their members.

And that relief should include an injunction. Injunctive relief is appropriate where the Plaintiffs can demonstrate (1) an irreparable injury, (2) the inadequacy of legal remedies like money damages, (3) that the balance of hardships favors the plaintiffs, and (4) that the public interest "would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Each of these factors favors entry of an injunction. As to irreparable injury, the Fifth Circuit has explained that "the loss of constitutional freedoms 'for even minimal periods of time … unquestionably constitutes irreparable injury.' " *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Fifth Circuit's determination that the challenged laws deprive 18-to-20-year-old members of Organizational Plaintiffs of their constitutional freedoms is therefore a finding of irreparable injury. And because the harm is irreparable, legal remedies are inadequate. No monetary damages could compensate for the deprivation a fundamental constitutional right, that is what makes it "irreparable." And even if legal damages *could* make up for such a deprivation, they are unavailable here anyway, because the Government is shielded by sovereign immunity. *See Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021).

Finally, the last two factors, the balance of hardships and the public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Again,

4

following the Fifth Circuit's holding that the challenged laws infringe a fundamental right, these factors are necessarily met, because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (quoting *Awad v. Ziriax*, 754 F. Supp. 2d 1298, 1308 (W.D. Okla. 2010)); *see also Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) (quoting *Awad*, 670 F.3d at 1132).

## II. The Government's Arguments for Narrower Relief Should Be Rejected.

The Government takes a different position. Under its proposal, Plaintiffs would receive no injunctive relief at all and even the declaratory relief awarded in this case effectively would be limited to individuals who are the named individual plaintiffs to this suit—Caleb Reese, Joseph Granich, and Emily Naquin. The Government also states that relief could extend to those who were members of the Organizational Plaintiffs at the time the suit was commenced, in November 6, 2020, and who were "identified and verified by respective Plaintiff organizations during the course of this litigation." But beyond the Individual Plaintiffs, this is a null set. Indeed, it actually does not include all of the Individual Plaintiffs, since Naquin was added as a party in an amendment to the complaint and was not a member of the Organizational Plaintiffs on November 6, 2020, when the original complaint was filed. And while the Government ignores the identification of Broussard on appeal in this case, *see* Br. in Supp. of Defs.' Proposed J. at 6, Doc. 79-2 (Sep. 2, 2025) ("Gov't Br.") (claiming it "do[es] not know the identity of any members of the organizational plaintiffs except for the three individual plaintiffs"), Broussard was also not a member of the Organizational Plaintiffs in 2020, when he was 15 years old. This Court should reject the Government's proposal.

5

### A. The Government's Proposal Is Contrary to Precedent.

The Government's proposal is objectionable for several reasons. First and foremost, as discussed above, it is contrary to Supreme Court and Fifth Circuit precedent. As explained, associational standing is predicated on the ability of an association to seek relief for its members, and this Court is bound to follow Supreme Court and Fifth Circuit precedent that has held that such relief is available.

Against this precedent, the Government cites *no case* that holds that an organization can only get relief for members it has identified, or members who were members at the beginning of the suit, and for good reason—no such authority exists. The *purpose* of associational standing is to allow organizations to seek to "vindicate the interests of [their] members" in court, an allowance that "assist[s] both courts and plaintiffs" and leverages the fact that "the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *Brock*, 477 U.S. at 289–90. For these reasons, the Court has recognized that cases litigated through associational standing have advantages over class actions. "While a class action creates an ad hoc union of injured plaintiffs who may be linked only by their common claims, an association suing to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital." *Id*. at 289. And just like a class action, the contours of an organization's membership can grow or change over time, such that identification of them all at the outset of the suit would be impossible. *Cf., e.g.*, *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 838 (9th Cir. 2022) ("[T]he fact that the membership of a class changes over time makes joinder of every class member all the more impracticable."). If the Government's position were adopted, it would effectively eliminate the benefits of associational standing, and rather than minimizing "the participation of individual members in the lawsuit," *Hunt*, 432 U.S. at 343, it would require each

6

and every one of the members to benefit from the suit to be identified at the outset. The Government's approach would be particularly problematic in a case like this one, where the organizations have members who are both turning 18 and aging into the group of affected members with standing, and turning 21 and aging out, all the time. *Cf. A.B.*, 30 F.4th at 838 ("Every year, as new freshmen matriculate into Campbell and as seniors graduate, the membership of potentially 25% of the student body may be expected to turn over."). In such a case, the existence of associational standing is all the more important for ameliorating these individuals of their harms. To give just one example, in *Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*, the D.C. Circuit held that an organization suing on behalf of terminally ill members seeking access to experimental treatments continued to have standing even though its original member-declarants had passed away:

> Because of the nature of their predicaments, many of those Alliance members who were members on July 28, 2003, when the complaint was filed, have succumbed to their terminal illnesses. However, the allegations in the complaint supplemented by the affidavits supplied by the Alliance establish that "at least one member . . . has standing to pursue this challenge."

469 F.3d 129, 134 (D.C. Cir. 2006) (quoting *Am. Libr. Ass'n v. FCC*, 406 F.3d 689, 696 (D.C. Cir. 2005)). It appears to be the Government's position that an organization like the Alliance's standing would vanish the moment each of the individuals who were members at the time the suit was filed passed away, even if new individuals in a similar profile were constantly being added to the organization's membership.

Furthermore, it is not clear that the Court would have jurisdiction to enter the judgment proposed by the Government. Plaintiffs' injuries are, by their nature, time bound. That is why, as discussed above, to demonstrate their continued ability to litigate this case on behalf of their members, Plaintiffs supplemented the record on appeal with evidence that Broussard is a current member with standing. But even Broussard, who is 20 years old, stands to gain nothing from his

participation in this litigation because he fails the Government's arbitrary requirement that an individual not only be an identified member with standing, but that he be a member at least since November 2020, when Plaintiffs initially filed this suit. Nor would the original individual Plaintiffs gain anything from the Government's proposal—they are all at least 22 years old now and have been free from the restrictions on 18-to-20-year-olds acquiring handguns for well over a year. A declaration that the law is unconstitutional as applied to them would not just be incomplete relief, as the Government characterizes it, *see* Gov't Br. at 10 n.4, it would be meaningless. Because, under the Government's proposal, the judgement would not "grant any effectual relief whatever to the prevailing party," embracing the Government's proposed relief would appear to be tantamount to declaring this action moot. *Jackson v. Noem*, 132 F.4th 790, 793 (5th Cir. 2025) (quoting *DeOtte v. Nevada*, 20 F.4th 1055, 1064 (5th Cir. 2021)). But this action is not moot. As discussed above, the Supreme Court and the Fifth Circuit have both repeatedly held that a suit maintained by an association is not moot as long as that association can identify at least *one* member with standing. It follows that this Court can and must grant effectual relief to Plaintiffs, which it can only do by rejecting the Government's narrow proposal.

### B. The Government's Reasons for Narrowing Relief Are Unfounded.

The Government offers two principal reasons for narrowing the relief to members of the organizations who were identified as members during litigation and who were members at the outset of the case. In addition to being foreclosed by the significant problems attendant on the Government's proposal discussed above, they are themselves not legitimate reasons to narrow the scope of relief to which Plaintiffs are entitled.

First, the Government argues that Federal Rule of Civil Procedure 65(d)'s requirement that an injunction "state its terms specifically" and "describe in reasonable detail … the act or acts

restrained or required," supports the limits it places on its proposed judgment. Fed. R. Civ. P. 65(d). As an initial matter, that *cannot* be right, because the Government's proposed judgment does not provide for an injunction at all, only for declaratory judgment, and Rule 65 simply does not speak to the scope of declaratory relief.

Leaving that issue aside, the Government's argument still fails as a justification for narrowing Plaintiffs' proposed injunction. The Government's argument is, essentially, that an injunction cannot be reasonably detailed unless it lists the name of every individual who is a member of the Organizational Plaintiffs. *See* Gov't Br. at 6. But that it does not know, itself, the name of every member who might be entitled to relief, does not render an order "too vague to be understood." *Id*. at 7 (quoting *Louisiana v. Biden*, 45 F.4th 841, 846 (5th Cir. 2022)). Indeed, as discussed above, this proposed limitation is antithetical to the notion of associational standing itself. An association's ability to litigate on behalf of its members is conditioned on the fact that the claims it seeks to litigate do not require those members to participate in the lawsuit, and as the Supreme Court has made clear, that factor is not met when the *remedy* is one that would require individualized determinations unique to each member. *See Warth*, 422 U.S. at 515–16. But the Court specifically noted that such issues are *irrelevant* in suits seeking injunctive and declaratory relief, because "it can reasonably be supposed that" "a declaration, injunction, or some other form of prospective relief," "if granted, will inure to the benefit of those members of the association actually injured." *Id.* at 515.

Unsurprisingly, given that the Supreme Court has blessed injunctive orders that extend to *all* of a plaintiff organization's members, the cases on which the Government stakes its claim that courts "have found injunctions too vague when they failed to provide sufficient notice of the individuals or entities against whom conduct was enjoined," are distinguishable. Gov't Br. at 7–8.

9

Not one involves a court finding an injunction could not reach members of a plaintiff association with injunctive relief. To take one example, the Government cites *American Red Cross v. Palm Beach Blood Bank, Inc.*, but in that case the injunction was impermissibly vague because it barred the defendant from possessing or using "any … documents that contain trade secrets that are the proprietary property of Plaintiff." 143 F.3d 1407, 1412 (11th Cir. 1998) (cleaned up). But unlike a trade secret document, an 18-to-20-year-old member of FPC, SAF, or LSA can identify themselves as such to a licensed firearm dealer, and the scope of the injunction we have proposed would bar the Government from enforcing federal law barring a handgun sale to such individuals on account of their age. Furthermore, the Eleventh Circuit went on to explain that it "would not expect an injunction in a case such as the one at bar to describe with particularity each of the documents that [the defendant] might misappropriate," but it did expect that an "injunction should put [the defendant] on notice as to the *types* of information … to which it applies." *Id.* (emphasis in original). The Government's position here is precisely the opposite. Plaintiffs have identified a type of individual—their 18-to-20-year-old members who wish to acquire handguns—and the Government responds that it needs to have all their names now (in fact, it needed their names five years ago). Nothing in *American Red Cross* requires so much.

Ultimately, the Government's objection here boils down to what it perceives as a practical problem with abiding by an injunction: "Defendants do not possess the means by which to verify the identities of other members" so that "even if an individual were to represent to Defendants that he or she is a member of one of the organizational plaintiffs, Defendants do not have the ability to verify the accuracy of that representation." Gov't Br. at 8. But that is no reason to deny Plaintiffs relief to which they are entitled. Under an appropriately crafted, "plaintiff-protective injunction, the burden is on the defendant to figure out how to comply." Samuel Bray, *Multiple Chancellors:*

10

*Reforming the National Injunction*, 131 HARV. L. REV. 417, 479 (2017). And here, it is not hard to imagine how the Government could do so. Currently, when an individual purchases a firearm from a federally licensed firearms dealer, as the 18-to-20-year-old members of the Organizational Plaintiffs have the right to do, they must fill out a "Firearms Transaction Record," also known as ATF Form 4473. *See* ATF Form 4473, *available at* https://perma.cc/L24D-GF2C. The form requires them to certify, following a warning that "making any false oral or written statement … with respect to this transaction, is a crime punishable as a felony under Federal law," that they are, in fact, eligible to purchase a firearm. *Id.* at 2. And in doing so, they attest to several things that it would be difficult for the government to independently know or to verify. *See, e.g.*, *id.* at 1 ("Do you intend to sell or otherwise dispose of any firearm listed on this form … in furtherance of any felony … [?]"). It is not hard to imagine the Government requiring an attestation from any 18-to-20-year-old who wishes to purchase a handgun or handgun ammunition that they are a member of one of the Organizational Plaintiffs and therefore entitled to benefit from this Court's injunctive order. Or it could simply decline to enforce the 18-to-20-year-old limitation across the board, treating all 18-to-20-year-olds the same. But the point is that this Court need not decide how the Government chooses to comply with its order—the Government is free to make that decision itself. *See* Bray, *supra* at 479. And the Government will not risk contempt proceedings as long as it does not enforce the law when licensed dealers sell handguns or handgun ammunition to otherwise qualified 18-to-20-year-olds who identify themselves as members of the Organizational Plaintiffs. The Government's arguments that practicalities militate against granting Plaintiffs' complete relief thus lack merit.

Second, the Government argues that Article III standing requirements and principles of equity require limiting the proposed judgment to members of the Organizational Plaintiffs who

11

were members when the suit was filed. Gov't Br. at 10. But this too boils down to nothing more than the Government rejecting the doctrine of associational standing, which this Court *must* take as a given. The Government's Article III argument is that because " 'standing is to be determined as of the commencement of a suit,' only members of the organizational plaintiffs who were members as of November 6, 2020 had standing to assert valid claims for relief." *Id*. at 11 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5 (1992)). But that formulation is mistaken, because it is not the individual members who must have standing throughout the duration of a suit, but the associations—and that is maintained as long as one identified member has standing, even if it is not the same member. *See Worth v. Jacobson*, 108 F.4th 677, 686–87 (8th Cir. 2024) (finding organizational plaintiffs challenging a ban on 18-to-20-year-olds carrying firearms for self-defense "have an unbroken chain of standing" through successive member declarants); *Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 445–46 nn.28–29 (3d Cir. 2025) (same). In other words, even if the specific member or members with an interest in the issue change throughout the litigation, so long as the organization itself has a "continuing interest" in the suit, it maintains standing, and appropriate relief flows to all its members if and when it wins. *Abigail All.*, 469 F.3d at 136 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 192 (2000)). The argument from equity fares no better. The Government complains that making injunctions available to organizational members "would be manifestly inequitable" because members who are themselves not plaintiffs would not be foreclosed from bringing a separate challenge at a future date. Gov't Br. at 12–13. But again, that criticism only makes sense if one ignores the fact that the actual parties before the court in this case are the associations, which *would have* been precluded from relitigating these issues against the federal government, had they lost. Any preclusive effect of associational litigation on members is not an issue that this Court needs to address here, and in

any event the Supreme Court has long recognized that at least in some circumstances those members may not be bound by the results of associational litigation. *See Brock*, 477 U.S. at 290 ("Should an association be deficient [in representing the interests of their members], a judgment won against it might not preclude subsequent claims by the association's members without offending due process principles."). Furthermore, the Government itself is not bound with respect to non-parties when it loses, so it would hardly be inequitable to apply the same result to non-party members of associational litigants. *See United States v. Mendoza*, 464 U.S. 154, 162 (1984) ("[N]onmutual offensive collateral estoppel simply does not apply against the government …").

It is telling that the Government cites for support on both of these points Justice Thomas's concurrence in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024). *See* Gov't Br. at 11–12. Justice Thomas's concurrence is not the law, and even as it lays out his concerns with the doctrine, it reaffirms that, under governing precedent, "[i]f a single member of an association has suffered an injury, our doctrine permits that association to seek relief for its entire membership." *All. for Hippocratic Med.*, 602 U.S. at 399 (Thomas, J., concurring). Given that this Court must apply that precedent, that is fatal to the Government's claim for so limiting Plaintiffs' relief.

### C. Plaintiffs Are Not Seeking Universal Relief.

Finally, the Government makes arguments in its brief against a universal injunction. Because Plaintiffs do not seek a universal injunction, these arguments are irrelevant, but because they are instructive about the proper scope of relief here, Plaintiffs will address them briefly. First, the Government claims—for the first time, to Plaintiffs knowledge—that "consistent with the executive branch's ordinary practice of intra-circuit acquiescence, Defendants do not plan to enforce the challenged laws within the geographical boundary of the Fifth Circuit" to prohibit FFLs from selling handguns and handgun ammunition to 18-to-20-year-olds. Gov't Br. at 4.

13

Second, the Government argues that "universal" declaratory or injunctive relief, extending to all 18-to-20-year-olds nationwide, "would be inappropriate" in light of the Supreme Court's recent decision in *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025). Gov't Br. at 4.

As to the Government's first point, although Plaintiffs are happy to learn that the Government is abiding by the Fifth Circuit's decision, that the law is not currently being enforced in Louisiana, Texas, or Mississippi does not at all diminish the need for declaratory and injunctive relief here. Plaintiffs have not sought universal relief for all 18-to-20-year-olds in the nation or even the Fifth Circuit. They *have* sought relief for all of their 18-to-20-year-old members, regardless of where they make a purchase, so the Government's granting of essentially "universal" relief for within the Fifth Circuit does not ameliorate the injuries to their members outside the Fifth Circuit's boundaries. What is more, without a judgment binding it, the Government would be free to reverse course tomorrow even within the Fifth Circuit.

As to the second, the Government's concerns about a "universal declaratory judgment" are off the mark. Although Plaintiffs' proposed declaratory judgment language is not party-specific, it does not have to be. By its nature, "[a] declaratory judgment is simply a statement of rights, not a binding order supplemented by continuing sanctions." *Steffel v. Thompson*, 415 U.S. 452, 482 (1974) (Rehnquist, J., concurring). It does not provide relief to those who are not parties to the action and it cannot preclude the government from continuing to argue in other cases that the challenged laws are constitutional. *See Mendoza*, 464 U.S. at 162. The Government is therefore wrong to suggest that entry of plaintiffs' proposed relief "would effectively overrule" or "issue a veto power over the Fourth Circuit's decision," in *McCoy v. ATF*, 140 F.4th 568 (4th Cir. 2025). Gov't Br. at 5. And in any event, if the Government were concerned about the possibility of conflicting interpretations of the Ban across the country, it could have sought certiorari in this case,

14

but declined to do so, despite knowing full well the scope of relief sought by the Plaintiffs here. *See* Am. Compl. at 23–24. The Government's decision to avoid seeking certiorari from the Fifth Circuit's clear and correct decision in this case cannot afford them an opportunity to avoid the natural—and required—consequences of it.

## CONCLUSION

The Court should enter the judgment proposed by Plaintiffs, declare the Ban on 18-to-20-year-olds acquiring handguns and handgun ammunition from licensed dealers unconstitutional, and enjoin Defendants from enforcing the Ban to prevent sales to members of the Organizational Plaintiffs.

Dated: September 19, 2025

/s/ George J. Armbruster III
George J. Armbruster III
Armbruster & Associates, APLC
332 E. Farrel Road, Suite D
Lafayette, LA 70508
Phone: (337) 889-5511
Fax: (337) 889-5512
Email: george@arm-assoc.com
Local Counsel

Respectfully submitted,

/s/ David H. Thompson
David H. Thompson *
Peter A. Patterson*
William V. Bergstrom*
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036
Telephone: (202) 220-9600
Email: dthompson@cooperkirk.com
*Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*